STATE, FORBES, PROSECUTOR, v. THE CITY OF ELIZABETH.

1. Where constructive notice by advertisement and sending by mail to the post office address is provided for in a statute relating to public improvements, a compliance with the statute will be sufficient evidence of notice. If the party appeared at the time and place designated, and was heard, there can be no objection afterwards to the formality of the notice.

2. The assessment must relate to the time when the improvement was made, and not to its condition after several years' exposure and wear upon it, and where a liberal allowance for defects, and excess of costs over benefits is shown, the assessment will not be set aside.

On *certiorari.*

Argued at November Term, 1879, before Justices DEPUE, SCUDDER and KNAPP.

For the plaintiff, *W. J. Magie.*

For the defendant, *R. E. Chetwood.*

The opinion of the court was delivered by

SCUDDER, J. This *certiorari* brings up for review an assessment imposed by the city of Elizabeth on certain lands on Orchard street, for paving said street with a wooden pavement.

Similar writs have been issued by others against whose lands like assessments have been made. All these cases named in the printed state of the case presented to the court, will be determined by this opinion.

A former assessment for this improvement having been set aside in this court, because that no notice was given of the making of the final assessments by the commissioners before they sent them into the city council for ratification, the city council directed the commissioners of assessments to make and report an assessment district, and proportionate assessment for

the costs, damages and expenses of said improvement. The commissioners reported, April 4th, 1877, a proportionate assessment, and on June 7th, 1877, made a report of their final assessment.

The right to levy a second assessment on the first being vacated for illegality, and the construction and validity of the supplements to the charter, and the laws under which these assessments were made, are considered and determined in *State, Watrous, pros.,* v. *City of Elizabeth,* 11 *Vroom* 278. It is only necessary, in this case, to examine the formal execution of the authority which has been conferred.

It is objected that no notice was given of either of said assessments, according to law.

By Section 5 of the supplement of the charter approved April 4th, 1873, the commissioners are required, after depositing their proportionate report and estimate in the office of the comptroller, for inspection, to " cause notice to be given to the owner or owners of the tracts of land designated on their map, by notice deposited in the post office, directed to the post office address of said owners, if known to the said commissioners, and also by at least one advertisement of a week's time, in two newspapers of said city, requiring all objections to be made to the commissioners at a time therein to be specified."

The commissioners reported that they had caused notice to be given to the owners of the tracts of land designated on their map, by notice directed to the post office address of said owners, if known to them, and caused notice to be published in two newspapers, as above directed ; that at the time and place specified in their notice—in the city hall, on Friday, the 13th day of April, 1877, at half past seven o'clock in the evening—they met and heard all parties interested who desired to be heard, and considered all objections to their report and estimate, made corrections, confirmed their estimate, and reported it to the common council for their consideration. On April 13th, 1877, four of the prosecutors in these writs, representing themselves to be a committee of the Orchard street property

owners, objected, in writing, to the estimate of benefits made by the commissioners to the property along that street, for the paving of the same, because the amount estimated is largely in excess of any such benefits, and is much more than the pavement is worth now or was ever worth. Protests were made to the council and meetings held at different stages of the progress of the work, the former signed by all the prosecutors in these writs, showing that they were vigilant, watchful and attentive at every part of these proceedings.

When the report of the final assessment was made, June 7th, 1877, the commissioners gave notice, June 8th, 1877, by publication in two newspapers of the city of Elizabeth, that all objections to said assessment should be made to them, at their office, on or before June 16th, 1877, and caused like notices to be mailed to all the owners of real estate within the district, except those whose post office addresses were unknown to the commissioners; and the commissioners report that, from June 8th to June 16th, 1877, their office was open, and they were present at regular business hours, and that they heard all interested in said assessment who asked to be heard, and considered all objections to said assessment.

I think it apppears that constructive notice was given to these prosecutors, by notices mailed to them, and by advertisement in two of the newspapers of the city of Elizabeth, according to the requirement of the charter; and I also think it appears by the examination of witnesses in the case, including several of these prosecutors, that they had actual notice of these assessments, and, either in person or by representation, appeared and contested them, both before the commissioners of assessment and the common council.

It need hardly be said that where constructive notice by advertisement and sending by mail to the post office address, is provided for in a statute relating to public improvements, a compliance with the statute will be sufficient evidence of notice, if there be no denial of the actual receipt of notice. And if it is further shown that the parties appeared at the time and place designated, and were heard, the object of the

notice has been attained, and there can be no objection, afterwards, to the mere formality of the notice. The reports of the commissioners, and the proofs taken, establish all these facts to my satisfaction, and there is no denial that all of the prosecutors had actual notice. On the contrary, it is manifest that, at every stage of these proceedings, they have been vigilant and contesting.

This case is not, therefore, like *State, Woodruff, pros.*, v. *City of Elizabeth*, 10 *Vroom* 55, where there was no notice of the final assessment, nor like *State, Kellogg, pros.*, v. *City of Elizabeth*, 8 *Vroom* 353, where there was no proof of actual notice, and the case turned on the sufficiency of notice, under Section 104 of the charter of 1863. Nor is it within the case of *State, Kellogg, pros.*, v. *City of Elizabeth*, 11 *Vroom* 274, 277, for there the notice given through the post office did not designate any time or place for hearing.

It is a significant fact, in this case, that a written protest, signed by an attorney, representing many of the prosecutors in these writs, objecting to the assessment proposed to be made by the commissioners of assessments, on the ground that the pavement is not a benefit to their lands to the amount of such assessment, is dated June 16th, 1877, the day appointed for hearing before the commissioners, showing that they had notice, and the real point of the objection.

The commissioners, in their final report, say that the amounts assessed by them upon the several tracts of land within said district, do not exceed the benefits received by such tracts, respectively, by reason of said improvement. This issue of fact is the main difference between these parties and the city of Elizabeth.

The pavement in this street is a wooden pavement, laid in 1871 and 1872. The contract for building it was $41,320. This was increased, by some incidental expenses, to $49,030.61, and, when the report of the commissioners was made, June 7th, 1877, they stated the sum of $60,234.22 as the amount of the costs, damages, and expenses of paving Orchard street, within the assessment district. This sum was apportioned by

them as follows: $37,336.87 to the city, and $22,887.35 to the several tracts of land in the district, for special benefits. This large deduction from the entire cost is an allowance to the property owners for the excess of cost over the special benefits to the property on the street. It is said that this allowance is not sufficient, and the witnesses who have been examined, in 1879, speak of the present and past condition of this pavement. It appears that, before and at the time the pavement was being laid, a sewer was also being constructed in this street; that the soil was, in places, like quicksand, and sank; that the pavement, when laid, sank in places, making it uneven, and bad for traveling; that some of the blocks have been taken out for repairs, recently, and are defective and decaying. But the assessment must relate to the time when the improvement was made, and not to its present condition, with the exposure and wear of several years upon it. We think that the commissioners have made a liberal estimate and allowance for all the defects that have been shown in the evidence, by putting nearly two-thirds of the entire cost of this improvement on the city, and imposing a little more than one-third of such cost on the property owners, for special benefits.

The assessment is affirmed, with costs.