ALFRED DE WITT ET AL. v. THE CITY OF ELIZABETH.

1. The act of March 8th, 1892, entitled "An act concerning the levying of assessments for sewers" (*Pamph. L., p.* 58), is constitutional.
2. An assessment made since the passage of said act, under an ordinance of the city of Elizabeth, to build a sewer, which provides that so much of the costs and expenses incurred in the making thereof as can be lawfully assessed on property specially benefited, shall be duly assessed

according to the city charter and the general laws of the state, will be
sustained, including benefits for both trunk and lateral sewers, unless
some valid objection is made thereto.

3. The court in this case, under the authority of the act of March 23d,
1881 (*Pamph. L.*, p. 194), sustains the assessment made by the commis-
sioners against the prosecutors, as it appears to be fair, and the prose-
cutors ought in justice to pay the same, as it does not exceed the
special benefit received by the lands of the prosecutors from the lateral
sewer built under the ordinance and the trunk sewers theretofore con-
structed, through which the sewage from the lateral is discharged into
the final outlet in Elizabeth river.

On *certiorari.*

Argued at June Term, 1893, before Justices DEPUE, LIP-
PINCOTT and ABBETT.

For the prosecutors, *Randolph, Condict & Black.*

For the defendant, *James C. Connelly.*

The opinion of the court was delivered by

ABBETT, J.    The *certiorari* in this case brings up for
review the proceedings taken by the city of Elizabeth in
relation to sewering Salem avenue from North Broad street
to the city line, and the assessments made on Salem avenue
lands for benefits thereto by reason of the construction of this
sewer, and also the trunk sewers into which it empties in
order to have an outlet.

All the prosecutors except Alfred De Witt have paid the
assessment on their lands.    At the present time he and a
Mrs. Clark, who is not one of the prosecutors, are the only
property owners who have not paid their assessments for this
sewer improvement.    De Witt and Helen I. Halsey, two of
the original prosecutors, on October 9th, 1890, protested
against the construction of said sewer, but withdrew their
protest November 7th, 1890.    The other prosecutor, Leon-
ella F. Dunlap, October 17th, 1890, petitioned the city
council for the sewer.    The ordinance for the improvement

was passed November 18th, 1890. The improvement was made in accordance therewith and paid for by the city. The city of Elizabeth many years ago was laid out in sewer districts, so as to make a complete system of drainage for the lands embraced therein. The plan was to place the larger sewers, built of brick, nearest to the outlet, and then other sewers were to be constructed connecting therewith, diminishing in size and finally terminating in twelve-inch pipe sewers at the extreme outskirts of the district, the trunk sewers to be constructed large enough to receive all the sewage that would come from the laterals connected therewith. One of these districts is known as the "Mill lane and Morris avenue sewer district." In that district, as part thereof, is the Salem avenue sewer. This sewer, as part of this sewerage scheme, empties into the Union avenue extension sewer, which empties into the Union avenue sewer, which empties into Mill lane sewer, which has its outlet in the Elizabeth river. All these sewers are embraced in and form part of the "Mill lane and Morris avenue sewer district." These main or trunk sewers were constructed many years ago, before any application was made for the Salem avenue sewer. When these main or trunk sewers were constructed, the Salem avenue property was deemed to be prospectively benefited thereby, as they were necessary to give an outlet to the proposed Salem avenue sewer when it should be constructed, and assessments were made on the basis of these prospective benefits. These assessments for prospective benefits had, however, to be abandoned, because the Supreme Court, in *State, Kellogg, pros.,* v. *Elizabeth,* 11 *Vroom* 274, held that "land which can be drained into a trunk sewer only after connecting laterals are built, cannot be assessed for the cost of the trunk sewer *until such laterals are constructed.*" The court in that case, however, said : "When the laterals are built so that sewerage through the mains is furnished to this property, *then* it will be lawful for the corporation to reimburse itself for the cost not only of the laterals, but also of

this principal sewer, so far as the peculiar advantage then accruing to that property will warrant."

The act of March 8th, 1892 (*Pamph. L., p.* 58), provided for the contingency suggested by the court in the above case. Its provisions authorized the commissioners appointed to assess the lots specially benefited by the lateral sewer, not only so much of the cost of the lateral as specially benefited said lands, but also so much of the cost of the main sewers connected with the lateral and giving it an outlet, as in their judgment was proper, provided the total amount assessed did not exceed the special benefit accruing to the lots from both the main and lateral sewers combined; and all lots or parcels of land so specially benefited were to be assessed in proportion to the benefits received by each.

From the foregoing considerations it appears that if the prosecutors' lands derived a special and peculiar benefit from this sewerage system, including the main sewers and the lateral or Salem avenue sewer combined, that these sewers having all been built, that the time has arrived when it is proper to assess prosecutors' lands therefor. Mere irregularities or defects in form or illegality in assessing are no longer available to set aside such an assessment. The act of March 23d, 1881, entitled "A general act respecting taxes, assessments and water rates" (*Pamph. L., p.* 194), was passed for the purpose of limiting objections of property owners to cases where the tax or assessment was unjust, and was intended to compel them to pay so much of the assessment as was justly due; and the court is required to amend all irregularities, errors or defects, and may determine and fix, by decree, a proper sum in all cases in which there may lawfully be an assessment.

This act has been liberally construed so as to enable the court summarily to settle disputes about assessments where there is sufficient before the court to enable it to determine what is a proper tax or assessment without doing injustice to any one. See *Printing Co.* v. *Assessors,* 22 *Vroom* 75; *Jones* v. *Landis Township,* 21 *Id.* 374; *Endicott* v. *Corson, Id.* 381; *In re Commissioners of Elizabeth,* 20 *Id.* 488; *State*

*Board of Assessors* v. *Morris and Essex Railroad Co.,* *Id.* 193; *Pfeiffer* v. *Miles,* 19 *Id.* 450; *Childs* v. *Howland,* *Id.* 425; *Saunders* v. *Morris, Id.* 100; *Dodge* v. *Love,* 18 *Id.* 436; *Newcomb* v. *Franklin Township,* 17 *Id.* 437; *Conover* v. *Honce, Id.* 347; *Hetfield* v. *Plainfield, Id.* 119; *Elizabeth* v. *Meeker,* 16 *Id.* 157; *Morgan* v. *Comptroller of Elizabeth,* 15 *Id.* 571; *Clark* v. *Mulford,* 14 *Id.* 550; *State* v. *Montclair and Greenwood Lake Railroad Co., Id.* 524. The Court of Errors and Appeals, in the case of *Elizabeth* v. *Meeker,* 16 *Vroom* 159, says, in construing the act of March 23d, 1881: "The language here employed appears to leave no doubt as to the purpose of the legislature. It was to assign to the court the province of seeing that its suitors who were liable, or whose property was subject to these assessments for public improvements, and who were seeking to vacate any of such assessments, should in every event be made to bear their fair and legal share of the burthen. This provision was well timed and most salutary, for, while it preserves to the owner of property the ability to relieve himself from so much of his tax as is unjust, it at the same time and by a summary procedure compels him to do justice to the public by paying such part of his assessment as is justly due. This law is, in the highest sense, remedial and should be construed with liberality so as to abate the mischief of taxpayers avoiding, by litigation, their honest dues to the government." The court also held that the statute referred " to the state of affairs existing at the time when the court is called upon to act. If, at that period, there may lawfully be an assessment, imposition or levy, then, in all cases, the judicial duty to impose the proper tax arises."

The constitutionality of this act of March 8th, 1892 (*Pamph. L., p.* 58), is attacked by the prosecutors, but it is clearly one of that class of laws which has been expressly held to be constitutional. In *In re Commissioners of Elizabeth,* 20 *Vroom* 496, &c., the subject is fully considered. The act of 1892 is constitutional because it merely provides for making an assess-

ment for a purpose and at a time when the court, in 11 *Vroom* 274, held it was proper to assess the same.

The act of 1881 renders it unnecessary for the court to consider, in detail, all the various objections to the proceedings made by the prosecutors. All that is necessary in this case is for the court to determine whether injustice has been done to the prosecutors by the assessments in question, and, if necessary, fix the amount that they should pay.

In pursuance of the act of 1892 the commissioners made an assessment against the Salem avenue property. Their report, in connection with the assessment map, shows in one column the land assessed by assessment numbers, in another the names of the owners, in another the amount assessed for the lateral (Salem avenue) sewer, in another the amount assessed for the trunk connections, and in another the total assessment on each tract. The owners received notice of this provisional assessment, and of a time for hearing objections thereto, by advertising and by notice sent through the mail. The prosecutors sent a written remonstrance, and Mr. De Witt telegraphed that he expected to be present at the hearing, and the commissioners waited for him, but he did not come. The objections made were considered by the commissioners, and thereafter, on August 30th, 1892, they confirmed their certificate of assessment, which was ratified and confirmed by the city council, September 1st, 1892.

The depositions show that the commissioners, in order to get at the amount of the assessment to put on each twenty-five-feet lot of the proper depth, calculated as to what would be the *present* cost to build the *entire sewer system* in that particular district *at the present time.* They then ascertained the cost of the lateral in Salem avenue and deducted this latter sum from the former, and determined that the difference was the cost to be charged to the trunk sewer connections. They then determined the assessment to be made on each tract in separate columns, one for the benefit from the lateral and the other for benefits from the trunk sewers, deducting from the amount determined to be assessed for trunk sewers, the

amount (if any) previously paid for the trunk sewer. The amounts of these credits or deductions are shown on page 35 of the case. They did not take into account the cost of the old sewers, and state that if they had the assessments would have been much higher. They proceeded upon the theory that they were to consider the entire special and peculiar benefits these Salem avenue lands would receive from the trunk and lateral sewers combined, as they were all necessary in order to give a sewage outlet to the Salem avenue lots. They determined, however, that if the property owner paid any of the assessments previously assessed for any of the trunk sewers which had to be used to give an outlet to the Salem avenue sewer, that such payment should be used as a credit to reduce the amount they had determined as the then special benefit for the trunk sewers. This action seems to be fair and just to the prosecutors. The total payments made before and under this last assessment together will not exceed what their lots are specially benefited by both the trunk and lateral sewers, as authorized to be imposed by the act of 1892. Even if we were in doubt, the judgment of the commissioners should prevail, as there is no convincing evidence in this case that it is not right. *Jeliff* v. *Newark,* 19 *Vroom* 101.

The objection that, with the exception of the Townley tract, the benefits were distributed along the line of the improvement in proportion to the frontage, does not necessarily make the assessment void. *State, Hunt, pros.,* v. *Rahway,* 10 *Vroom* 646; *S. C.,* 11 *Id.* 613. As there is no evidence of injustice to the prosecutors in this case, either apparent on the papers or shown by the testimony, arising from such distribution of benefits, we see no reason for setting the assessment aside on that ground, and in this we follow the rule laid down in *State, Pudney, pros.,* v. *Village of Passaic,* 8 *Vroom* 65. The non-assessment of the Townley tract is satisfactorily explained, but even if it had not been, it is immaterial so far as the prosecutors are concerned, because the city assumed its payment, and it did not therefore affect the assessment against the prosecutors' land.

The objection that the notice of intention was not properly published, if material in this case, is answered by the admission that it " was published for the requisite length of time in the papers designated by law previous to the passage of the ordinance."

We find no injury to the prosecutors in the assessment made under the ordinance and the act of 1892. They had notice and ample opportunity to be heard, and the amount assessed against their property seems to be fair, and they have, with the exception of Mr. De Witt, already paid the assessments against their property. If it is deemed necessary, we will, under the act of 1881, fix the amounts to be assessed against the lands of the prosecutors at the sums named by the commissioners.

The writ should be dismissed, but without costs as against the prosecutors.