29 N.J. Super. 16 (1953)
101 A.2d 563
IN THE MATTER OF THE APPEAL OF VARIOUS PROPERTY OWNERS FROM SANITARY SEWER ASSESSMENTS LEVIED BY THE COMMON COUNCIL OF THE CITY OF RAHWAY, UNION COUNTY, NEW JERSEY, IMPROVEMENT NO. 322, CONFIRMED MAY 14, 1952. FRANK J. AND E.S. HILLS, ET ALS. (PROPERTY OWNERS LISTED IN CASE NO. 3136 AND DOCKET NO. L-7346-51) AND MAVIN HOLDING CO., INC., ET ALS. (PROPERTY OWNERS LISTED IN CASE NO. 3328 AND DOCKET NO. L-7298-51), PLAINTIFFS-RESPONDENTS,
v.
CITY OF RAHWAY, A MUNICIPAL CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued December 7, 1953.
Decided December 18, 1953.
*18 Before Judges CLAPP, GOLDMANN and EWART.
Mr. James F. Patten argued the cause for appellant (Mr. William S. Gurkin, attorney).
Mr. Saul Neivert argued the cause for respondents.
The opinion of the court was delivered by EWART, J.A.D.
The City of Rahway prosecutes this appeal from a judgment entered June 26, 1953 in the Law Division of this court, by which judgment an assessment for the construction of extensions to the city's sanitary sewage system was reduced from $4.3703 per lineal foot to $4.00984 per lineal foot, which total reduction in the assessment was ordered to be paid by the City of Rahway.
August 27, 1947 the city adopted an ordinance authorizing the construction of sanitary sewers beneath certain enumerated streets of the city, as an extension to the then existing sewage system; appropriated the sum of $110,000 to meet the estimated cost thereof; and provided in section 2 of the ordinance "* * * that the costs and expenses of the said improvement shall be duly assessed upon the properties benefiting thereby in accordance with the law as a local *19 improvement." The extensions to the sewer were duly constructed in accordance with the terms of the ordinance at a total cost of $99,230.65; an assessor's report of the work and the cost thereof, showing the lands benefited thereby, etc., dated September 10, 1951, was duly filed; and the proposed assessments shown in the assessor's report at the rate of $4.3703 per lineal foot against the lands of the respondents benefited by the improvement was duly confirmed by city council on May 24, 1952. The improvement consisted of a trunk sewer and laterals, as shown upon a map admitted in evidence at the pretrial conference and marked Exhibit P-1. There were trunk sewers having diameters of 10, 12 and 18 inches respectively, and lateral sewers of a diameter of 8 inches joining into the main trunk sewers.
It was stipulated that sometime between the date of the adoption of the ordinance and the making of the assessor's report to city council, lands adjacent to the territory served by the sewers so constructed under the aforesaid ordinance, and which lands were vacant and unimproved at the date of the adoption of the ordinance, were improved by the construction of approximately 200 dwelling houses thereon; that the owners or developers of this tract of land formerly unimproved, constructed lateral sewers throughout the development at their own expense that were connected with and emptied into the trunk line sewer constructed by the City under the aforesaid ordinance, the connection having been made with the trunk sewer at the intersection of Milton and Richard Boulevards; and that, as of the date of the assessor's report, these 200 or more houses, constructed on lands formerly unimproved, were being served by the trunk sewer constructed by the city under the aforesaid ordinance by means of the lateral sewer lines constructed by the property owner or developer having been connected with the city sewage trunk line as aforesaid.
The map referred to above and marked Exhibit P-1 has been conveniently marked with red lines to show the line of the sewers constructed by the city beneath city streets as authorized in the ordinance; has been marked to show the *20 varying sizes or diameter of the trunk lines and laterals so constructed by the city; the area of the land assessed by the city for the making of these improvements has been shaded on said map in blue; certain city-owned lands adjacent to the line of the sewer and subject to the improvement assessment have been shaded in yellow on said map; and the lands unimproved at the date of the adoption of the ordinance, upon which 200 or more dwellings were constructed prior to the date of the making of the improvement assessment, upon which lands the owner or developer constructed, at his or their own expense, lateral sewers to serve the 200 dwelling houses and which lateral sewers were connected up with the city trunk line sewer, are shaded green on said map. The area so shaded in green is immediately adjacent to the area shaded in blue.
The city assessed the whole cost of the improvement at the rate of $4.3703 per lineal foot against the lands adjacent to the lines of the sewers constructed by the city under the ordinance, including lands owned by the city and shaded in yellow on the aforesaid map, and lands owned by the respondents and others and shaded in blue on said map. The city did not assess any part of the cost of the constructing of said sewers against the lands shaded in green and which lands, at the time of the making of the assessment, were actually being served by the city sewers by means of the laterals constructed by the owners of the property shaded in green and hooked into the city sewage system.
The respondents, conceiving that the lands shaded in green on the aforesaid map should have borne an equitable share of the cost of the making of said sewer improvements, appealed the assessment to the Law Division of the Superior Court pursuant to the statute, R.S. 40:56-54.
At the argument of this appeal, it was conceded by counsel for the city that the area shaded green on the said map in which 200 houses had been constructed was, as of the date of the assessor's report on September 10, 1951 and as of the date of the confirmation thereof on May 24, 1952, being served by the trunk sewer constructed by the city under said *21 ordinance, by means of the laterals constructed by the property owners and hooked into the city line, and that to that extent the lands shaded in green were benefited.
It was stipulated at the pretrial conference that the total cost of the improvements in the sum of $99,230.65 had been assessed against lands having total frontage on the sewer lines of 22,706.53 feet, shown in blue and yellow on the said map marked Exhibit P-1; that the assessment rate per front foot for said land was $4.3703; that the lands shaded in green on said map (not assessed for the improvement) comprise a total foot frontage of 10,910.40 feet; and that if the lands shaded in green on said map be included in the assessment for benefits, it would result in changing the assessment against the lands shaded in blue on said map (respondents' lands) from $4.3703 per front foot, as fixed in the assessment report, to $4.00984 per front foot; and that the difference could be made up by assessing the lands in green at the rate of .74980 per front foot.
In a written memorandum the trial judge held that the lands shaded in green on the aforesaid map had undoubtedly been benefited by the construction of sewers by the city and, pursuant to the stipulation entered at the pretrial conference, reduced the assessment upon the lands shaded in blue on said map, being lands of the respondents and others, from $4.3703 per front foot to $4.00984 per front foot, with the reduction to be paid by the City of Rahway. That left the city free to recover the amount by which the assessment was reduced by making an assessment against the lands shaded in green on said map, and which lands had not theretofore been assessed for the improvement, pursuant to the provisions of R.S. 40:56-52.
On this appeal the City contends as follows:
First: That it is a presumption of law that all assessments for local improvements were properly assessed and confirmed. That is no doubt true. R.S. 40:56-33. Appeal of Public Service Electric and Gas Co., 18 N.J. Super. 357 (App. Div. 1952). But it is of course a rebuttable presumption.
*22 Second: That whether or not an improvement assessment is fair and valid is a question of fact. That proposition also we think may be conceded as true.
Third: That failure to include the lands shaded in green does not invalidate the assessments. Under this point the city argues that it was not necessary as a matter of law to include in the assessment the lands colored in green, and that the true test is whether any particular lot was assessed in excess of the benefits conferred and not whether any other lot was assessed at a lower rate or not at all, citing Wilson v. City of Ocean City, 11 N.J. Misc. 325 (Sup. Ct. 1933), affirmed 112 N.J.L. 97 (E. & A. 1934). The case cited involved assessment for benefits conferred by the construction of a sewage system. Properties abutting the sewer had been assessed on a front-foot basis and the court held that was a proper basis in that particular case; the court refused to pass upon the charge that the assessments were in excess of the actual benefits conferred because that question was then pending before the Circuit Court on an appeal from the assessment as authorized by the statute; the court rejected the argument that certain lots not abutting upon the sewer, but which might be connected therewith later, should have been assessed because such lands were not assessable until the facilities for such connection might be afforded them; and in passing the court remarked that the question was whether any individual lot was assessed for an amount in excess of the benefits conferred (although the court expressly refused to consider that question as above stated) and not whether some other lot was assessed at a lower rate or not at all. The remark last mentioned might have referred to the lots not abutting the sewer and not connected therewith and in that sense was no doubt a correct statement. However, as a general rule, that statement is not in harmony with the rule enunciated in numerous other cases hereinafter cited.
The ordinance of the City of Rahway authorizing the construction of the sewers as a local improvement, with the cost thereof to be assessed upon the lands in the vicinity *23 thereof and benefited thereby, was adopted under authority of the provisions of the Home Rule Act of 1917, L. 1917, c. 152, R.S. 40:56-1 et seq. L. 1917, Art. XX, c. 152, § 21, R.S. 40:56-26, requires that the board or commission making the assessment "shall thereupon make a just and equitable assessment of the benefits conferred upon any real estate by reason of such improvement." And the next section of the act, R.S. 40:56-27, requires that all assessments levied for a local improvement shall in each case be as nearly as may be in proportion to and not in excess of the peculiar benefit or advantage or increase in value which the respective lots and parcels of real estate shall be deemed to receive by reason of such improvement.
These sections contemplate that not some but all of the lands benefited by the improvement shall pay the cost thereof when it comes to making the assessment. Furthermore, the ordinance under which these improvements were made, in agreement with the statutory requirements, provided "that the costs and expenses of the said improvements shall be duly assessed upon the properties benefiting thereby in accordance with the law as a local improvement."
Lands served by a sewage system constructed by a city, although not on the line of the sewer or of the street through which the sewer runs, if benefited, are subject to assessment. Henderson v. Mayor, etc., of Jersey City, 41 N.J.L. 489 (Sup. Ct. 1879). And this is true of lands served by lateral sewers, not fronting on the main or trunk sewer, where such lateral sewers empty into the main sewer. Schlapfer v. Town of Union, 53 N.J.L. 67 (Sup. Ct. 1890); DeWitt v. City of Elizabeth, 56 N.J.L. 119 (Sup. Ct. 1893); Simmons v. City of Millville, 75 N.J.L. 177 (Sup. Ct. 1907), affirmed 76 N.J.L. 821 (E. & A. 1908); River Edge Homes, Inc. v. Borough of River Edge, 130 N.J.L. 376 (Sup. Ct. 1943).
In Schlapfer v. Town of Union, supra, and in Simmons v. City of Millville, supra, assessments for benefits conferred by the construction of sewage lines were set aside because the whole cost of the construction was levied against lands fronting *24 on the lines of the sewer and omitted to assess other lands served by lateral sewers which emptied into the main or trunk sewer, thus throwing an undue burden upon that portion of the lands benefited which fronted on the main sewer and exempting from assessment other lands which were also benefited.
River Edge Homes, Inc. v. Borough of River Edge, supra, is authority for the proposition that a municipality may assess for benefits conferred by the construction of a trunk sewer lands not fronting on the trunk sewer but whose owner constructed a pumping station and laterals to connect said lands with the trunk sewer built by the municipality.
We think it perfectly clear that at the time the assessment for benefits was made in the City of Rahway, the lands shaded in green on the map, Exhibit P-1, were benefited by the sewers constructed by the City; that the omission to assess the lands shaded in green for a portion of the cost of constructing the sewers was contrary to both the terms of the statute and of the ordinance under which the improvement was made; that this omission threw an undue and unfair burden upon the lands that were assessed; and that for these reasons the assessments as made by the City cannot be allowed to stand.
Fourth: That the lands shaded in green on the map, Exhibit P-1, could not have been properly included in the assessment at the time the ordinance was adopted. The correctness of that statement may be conceded. Gross v. Hague, 99 N.J.L. 457 (E. & A. 1923); Gorab v. Wood-Ridge, 133 N.J.L. 162 (Sup. Ct. 1945); 63 C.J.S., Municipal Corporations, § 1385, page 1153. However, neither could the lands actually fronting on the sewer and benefited by the construction thereof be assessed at the time of the adoption of the ordinance and before the improvements were actually made.
Under this point the city contends that an assessment relates back to the time of the commencement of the work or to the date of the passage of the ordinance, citing in support thereof, Forbes v. City of Elizabeth, 42 N.J.L. 56 *25 (Sup. Ct. 1880), and Commissioners of Elizabeth, 49 N.J.L. 488 (Sup. Ct. 1887).
In the Forbes case, supra, the City of Elizabeth had improved Orchard Street by the laying of a wooden pavement in the years 1871 and 1872. The work was done as a local improvement, with the cost thereof to be assessed against the properties benefited thereby. A report of commissioners covering the improvement was made in 1877, but because of objections made was rejected and a re-assessment was made in 1879. In the meantime the pavement laid in 1871 and 1872 deteriorated considerably in places and, in that connection, the court held that the assessment should relate back to the time when the improvement was made and not to the deteriorated condition of the pavement as of the date of the assessment after several years' exposure to wear and weather.
In re Commissioners of Elizabeth, supra, involved a controversy between the right of the city to assess a lot for local improvements as against the right of a purchaser who took title to the lot after the improvement had been made but before the assessment, and in that case the court held that the liability of the land for assessment springs from the construction of an authorized public work which confers a special benefit and arises when the work is performed.
Neither of these cases is authority for the proposition that the lands shaded in green on the map, Exhibit P-1, should be exempt from assessment for benefits because the improvements had not been made nor the benefits conferred at the time the ordinance was adopted. The ordinance authorizing the improvements and under which the assessment for improvements was made designated the particular streets in which the sewers were to be laid but properly omitted to describe the lands to be assessed therefor other than, as contemplated by the statute, that the cost of the improvement should be assessed "upon the properties benefiting thereby." The lands shaded in green were neither specifically included nor excluded in the lands to be assessed for the improvements, but it is conceded that the lands *26 shaded in green on the map, Exhibit P-1, actually were benefited and were connected with and receiving benefits from the construction of the sewers by the City at the time the assessments were made.
The judgment below does not leave the City without a remedy. There is specific authority in the statute for the City to assess the lands shaded in green on Exhibit P-1 to the extent of the benefits conferred by the construction of the sewer. R.S. 40:56-52.
The judgment below is affirmed.