(65 App. Div. 576.)

### BATTERMAN v. CITY OF NEW YORK.

(Supreme Court, Appellate Division, Second Department. November 15, 1901.)

1. TAXATION—EXEMPTION—WATER RATES—ASSESSMENT AGAINST CEMETERY—STATUTES.

Laws 1847, c. 133, § 10, as amended by Laws 1877, c. 31, provides that the cemetery lands and property of any association formed pursuant to the act shall be exempt from public taxes, rates, and assessments. *Held*, that water rates assessed against cemetery property abutting on streets in which water mains were laid were not public taxes, rates, or assessments.

2. SAME—WATER RATES—ESTIMATE OF BENEFITS.

In computing the water rates to be paid by any property abutting on streets in which mains are laid, the rate is properly and justly estimated, as near as may be, by the frontage of the lots on the street.

3. SAME—ANNUAL IMPOST.

Where a city assesses water rates against property abutting on streets in which water mains are laid, the objection that the water tax is not an assessment, because it is in the nature of an annual impost, is without merit, the special benefit being the maintenance of the pipe and the supply of water therein.

4. SAME—COST OF CONSTRUCTION.

Where a city levies water taxes against property abutting on streets in which water mains are laid, that the rate levied is not confined to the cost of construction and maintenance of the particular pipe and the supply therein in front of the premises in question is not inimical to the validity of the assessment.

5. SAME—EXEMPTION—STATUTES—PROPERTY EXEMPT FROM EXECUTION.

Laws 1847, c. 133, § 10, as amended by Laws 1877, c. 31, provides that the cemetery lands and the property of any association formed pursuant to the act shall not be liable to sale on execution, and 1 Rev. St. p. 388, § 4, subd. 9, provides an exemption from taxation for all property exempt by law from execution. *Held*, that the latter statute did not render the property of a cemetery, subject to the provisions of the former statute, exempt from an assessment for water rates.

Appeal from special term, Kings county.

Action by Henry Batterman against the city of New York. From the judgment, plaintiff and defendant appeal. Affirmed.

These are cross appeals from a judgment of the special term in an action brought to declare the annual water rates assessed against certain cemetery property in the city of Brooklyn for the years 1886 to 1897, inclusive, null and void, and to discharge them as a lien or cloud upon the plaintiff's title. The special term decided that the rates for 1886 and 1887 were illegal and void, but that the rates for the other years were legal and valid, and that the property was not exempt therefrom. The decision was based upon a stipulation that the defendant is the successor of the city of Brooklyn; that the land in question was formerly known as "Union Cemetery," established pursuant to chapter 196 of the Laws of 1853, and was such cemetery from 1886 until November 27, 1897; that the cemetery did not embrace more than 10 acres, and during the last-named period was used exclusively for cemetery purposes. Also, that by the said chapter 196 the said cemetery was deemed and taken as a rural cemetery, within the meaning of chapter 133 of the Laws of 1847, and was subject to the benefits and restrictions and possessed

·of all the rights and immunities set forth in said act, except as otherwise provided in chapter 196 of the Laws of 1853. Also, that the exceptions in the last-named act have no application; that chapter 133 of the Laws of 1847 was amended by chapter 31 of the Laws of 1877; that in the years 1886 to 1897, inclusive, water rents and rates were made, levied, and confirmed annually on the premises. Also, that during this period the premises had a frontage of 414 feet on Irving avenue, in said city, on which there was laid a water main and distributing pipe, and also of 495 feet on Palmetto street, upon which there was laid a similar pipe. Also, that during such times the uniform assessment for frontage throughout the city was 10 cents per running foot. Also, that the city supplied water to the premises from said mains to a hydrant on the premises of the said cemetery, through which water was used by the caretaker and occupant of a building on the premises and otherwise to water the graves in the cemetery; and that the uniform rent for water in two-story buildings during all the years was $11, but there was no water in the said building itself.

Argued before GOODRICH, P. J., and JENKS, WOODWARD, HIRSCHBERG, and SEWELL, JJ.

Joseph A. Flannery, for plaintiff.

William J. Carr (Luke D. Stapleton, on the brief), for defendant.

JENKS, J. I understand that the defendant now virtually abandons its appeal by the concession that the water rates levied upon the cemetery in 1886 and 1887 were void in that the act neither provided for the notice nor afforded hearing, and so was unconstitutional. Section 10 of chapter 133, Laws 1847, as amended by chapter 31, Laws 1877 (the amendment being included in brackets), provides:

"The cemetery lands and property of any association formed pursuant to this act [and any property held in trust by it for any of the purposes mentioned in section 9 of this act], shall be exempt from all public taxes, rates and assessments, and shall not be liable to be sold on execution, or be applied in payment of debts due from any individual proprietor. But the proprietors of lots or plots in such cemeteries, their heirs or devisees, may hold the same exempt therefrom so long as the same shall remain dedicated to the purposes of a cemetery, and during that time no street, road, or avenue or thoroughfare shall be laid out through such cemetery or any part of the lands held by such association for the purposes aforesaid, without the consent of the trustees of such association, except by special permission of the legislature of the state."

Statutes of exemption from taxation are to be strictly construed. The words "public taxes, rates, and assessments" are to be read as if written "public taxes, public rates, and public assessments." Buffalo City Cemetery v. City of Buffalo, 46 N. Y. 506. The question, then, is whether, within the contemplation of a statute of exemption from taxation, these water rates are public assessments. We find the definition of public assessments in the Buffalo City Cemetery Case, supra. The court, per Folger, J., say:

"We think that the current of authorities of this state and in some of the sister states run to this result: That public taxes, rates, and assessments are those which are levied and taken out of the property of the person assessed for some or general use or purpose in which he has no direct, immediate, and peculiar interest; being exactions from him toward the expense of carrying on the government, either directly and in general,—that of the whole commonwealth, or more mediately and particularly through the intervention of municipal corporations; and that those charges or impositions which are laid directly upon the property in a circumscribed locality, to effect

some work of local convenience, which in its results is of peculiar advantage and importance to the property especially assessed for the expense of it, are not public, but are local and private."

See, too, the discussion and adoption of the language of Judge Cooley relative to special assessments in Illinois Cent. R. Co. v. City of Decatur, 147 U. S. 190, 198; 13 Sup. Ct. 293, 294, 37 L. Ed. 132, 135.

Judge Cooley, in his work on Taxation (2d. Ed.), at page 620, writing of water pipes in streets, says:

"Of these it has been said that 'the benefits are local, as the use of water must necessarily be most restricted to the benefit of the property on [the] lines, both for domestic purposes and for the extinguishment of fires. * * * The maintenance of pipes and the supplying of water are necessarily a continuing expense,' and for these reasons the assessment of the costs upon adjacent property is within the general principle of local assessments,"— citing Allentown v. Henry, 73 Pa. 404, 406; Allen v. Drew, 44 Vt. 174, 187.

In the latter case Redfield, J., said:

"It is not easy to see any distinction between an assessment for building a sewer or sidewalk and an aqueduct. They are each in degree a general benefit to the public, and a special benefit to the local property, both in the uses and in the enhanced value of the property. The proprietor may, indeed, leave his house tenantless, and his vacant lots unvisited; but the assessment is not, for that reason, void. Such assessments are justified on the ground that the subject of the tax receives an equivalent."

As water rates were not levied upon all lots in the city, but only on those lots that fronted upon streets wherein water mains were laid, it is obvious that such system of impost is consistent with the theory that the laying of water mains was a special and a peculiar benefit to the lots fronting on such streets, aside from any benefit conferred thereby upon the community at large or upon all of the realty within the city. The very able counsel for the appellant in his learned brief contends that these water rates are not analogous to an imposition for the cost of a local improvement, because an assessment for water rates according to frontage, and irrespective of benefit, would, if considered as a local assessment, be unconstitutional; citing In re Munn, 165 N. Y. 149, 58 N. E. 881; Village of Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443. In the first case the court only said:

"Had the assessors imposed the assessment uniformly in proportion to the frontage of each lot when or when not benefited in like proportion, that would have been an erroneous principle, since all were not equally benefited. Indeed, such a principle of assessment has been held to be unconstitutional in certain cases by the supreme court of the United States."

But, plainly, the benefit conferred in like proportion does not refer to the benefit which the property owner may actually derive therefrom, but to that which he can derive therefrom. When the water mains are laid in the street, this is the special benefit conferred by the city upon the property. The benefit offered, and not the extent of the use thereof by him to whom it is open, is the test. What practical use the owner may or may not make of that benefit, or the extent of such use, is not to be considered. The pipe, presumably, is uniform in size, and the supply of water given thereby may

be drawn therefrom without stint.  So far as the benefit conferred
is concerned, it would seem that it is properly and justly estimated,
as near as may be, by the frontage of these city lots upon the street
wherein the main was laid.   See the discussion of Cullen, J., in Conde
v. City of Schenectady, 164 N. Y. 258, 262, 58 N. E. 130, and cases
cited; Dill. Mun. Corp. §§ 752, 761, 809.   Village of Norwood v.
Baker, supra, involved an assessment for the opening of a highway,
and the court held that the assessment was illegal in itself because
it rested on a basis which excluded any consideration of benefits.
Page 291, 172 U. S., page 195, 19 Sup. Ct., and page 452, 43 L. Ed.
But at page 294, 172 U. S., page 196, 19 Sup. Ct., and page 453, 43 L.
Ed., the court is careful to reiterate the principles of its decision in
Parsons v. District of Columbia, 170 U. S. 45, 18 Sup. Ct. 521, 42 L.
Ed. 943, which is directly in point in the case at bar.   The learned
counsel for the appellant earnestly insists that we should follow
Vreeland v. Jersey City, 43 N. J. Law, 135, 638.   But the decisions
of the courts of New Jersey upon this scheme of local assessments
notably are against the general trend of the authorities.   See au-
thorities, supra; Dill. Mun. Corp. § 761, subd. 6.   An interesting and
learned discussion by Judge Dillon touching the New Jersey deci-
sions is found in section 760a of his treatise on Municipal Corpora-
tions, and the various notes thereunder.

It is further objected that this water tax is not an assessment, be-
cause it is an annual impost.   But the special benefit is the mainte-
nance of the pipes and the supply of the water therein.   Judge
Cooley, in the quotation already cited to the effect that water pipes
are of the character of local assessments, says, "The maintenance of
pipes and water supply are necessarily a continuing expense."   Nor
is there any force in the point that the water taxes are levied to pay
the cost of the system; i. e. to state the converse, that the rate
levied is not confined to pay the cost of construction and mainte-
nance of the particular pipe and the supply therein in front of the
premises in question.   Parsons v. District of Columbia, supra; Leo-
minster v. Conant, 139 Mass. 384, 2 N. E. 690.   In re Trustees of
Union College, 129 N. Y. 308, 29 N. E. 460, is not in point.   It is
true that Finch, J., in his opinion, says, "It is quite plain that these
water rates were taxes assessed against the owner or occupants."
But the question in that case was not as to the specific definition
or classification of water rates,—whether taxes or assessments, gen-
eral or special,—but as to the constitutionality of a statute that af-
forded no notice, and it was entirely proper to speak of the water
rate as a tax in its relation to the question then up for consideration,
for "tax" is the generic term, the rates were laid under the power
of taxation, and the principle discussed was one which applied to
the due exercise of the taxing power.   In the same opinion the
learned judge speaks of the "original assessments in the present
case."   In Remsen v. Wheeler, 105 N. Y. 573, 577, 12 N. E. 564, the
same court continually speaks of similar charges as "assessments
for water rates."   I think that the property was not exempt from
taxation under the provisions of 1 Rev. St. p. 388, § 4, subd. 9, which
provides an exemption for all property exempted by law from exe-

cution. Hassan v. City of Rochester, 67 N. Y. 528. Without discussion of the further grounds relied upon by the learned and able counsel for the corporation in their exhaustive brief, I have concluded, for the reasons stated, that the statute is not to be construed as an exemption. When we leave the generic sense of the term, we regard a tax as a burden. It is an individual contribution to governmental needs, and the return is in the existence of the government which it supports. But that kind of tax classified as a special assessment or a local assessment is not regarded as a contribution levied for the needs of government, and indirectly compensated for by the existence of that government, but as an exaction of an equivalent from the particular property upon which a direct and special benefit has been conferred. Upon the general principle, in addition to the cases cited, see In re Mayor, etc., of City of New York, 11 Johns. 77; Trustees of Illinois & M. Canal v. City of Chicago, 12 Ill. 406; Northern Liberties v. St. John's Church, 13 Pa. 104; Mayor, etc., of City of Baltimore v. Proprietors of Green Mount Cemetery, 7 Md. 517; Lefevre v. Mayor, etc., 2 Mich. 588; City of Paterson v. Society for Establishing Useful Manufactures, 24 N. J. Law, 385. An altruistic policy may well relieve from a burden, and yet at the same time refuse to remit the equivalent exacted for a benefit conferred by the public purse. It may consistently relieve from contribution to the revenue required for government, but refuse a donation from that revenue. I think that this is the meed and measure of the legislative relief afforded by the statute that we now consider.

The judgment must be affirmed, but, under the circumstances, without costs of this appeal to either party. All concur.