335 P.2d 558

E. M. CHAPMAN, Jr., Ann Pickard, W. A. Toon, Earl T. Bettis, Thomas S. Hatton, and Kenneth E. Ashcraft, Plaintiffs-Appellees,

v.

CITY OF ALBUQUERQUE, Defendant-Appellant.

No. 6421.

Supreme Court of New Mexico.

Feb. 9, 1959.

230

Frank L. Horan, Paul F. Henderson, Jr., Albuquerque, for appellant.

Rodey, Dickason, Sloan, Akin & Robb, William C. Schaab, Albuquerque, for appellees.

McGHEE, Justice.

The question before us in this litigation is the authority of the City of Albuquerque to enact its ordinances number 1075 and number 1085 and to enforce them through regulations granting certain exemptions and making certain distinctions. The purpose of enacting both ordinances was to make available increased funds for the operation and maintenance of the water and sewer facilities operated by the city.

Ordinance number 1075 reads in part as follows:

"Section 2. There is hereby imposed upon all improved lots or unsubdivided land within the City of Albuquerque, New Mexico, not having sewer connections which lots or land adjoin or abut upon streets, ways, alleys, boulevards, avenues, roads, or easements, through which sewer pipes are laid, and adequate service thereto is available, a minimum annual charge of twelve (12) cents per front foot of such premises so adjoining or abutting upon such streets, ways, alleys, boulevards, avenues, roads, or easements.

"Section 3. There is hereby imposed upon all unimproved lots or unsubdivided land within the City of Albuquerque, New Mexico, not having sewer connections, which lots or land adjoin or abut upon streets, ways, alleys, boulevards, avenues, roads, or ·

easements through which sewer pipes are laid, and adequate service thereto is available, a minimum annual charge of six (6) cents per front foot of such premises so adjoining or abutting upon such streets, ways, alleys, boulevards, avenues, roads, or easements. Provided, however, that no such charge shall be imposed under the provisions of this section on properties located within the City of Albuquerque and outside the boundaries of the Middle Rio Grande Conservancy District, unless City water service is also available to such property."

It was purportedly enacted under the authority of § 14-40-38, N.M.S.A., 1953, which reads:

"Municipal corporations having sewers shall have the right by general ordinance to levy annual maintenance or service charges, and special assessments upon improved and unimproved lots and land adjoining streets and alleys through which sewer pipes are laid, and upon premises and improvements otherwise situated but having sewer connection, either upon the front foot, volume of sewage, or number of outlets basis, such as may be just and reasonable, *for the purpose of defraying the expense of maintaining, enlarging, extending, constructing, operating and keeping in repair* said sewers and a suitable sewage disposal plant, and *paying the interest and principal on sewer revenue bonds* issued to pay for any such construction, and any such charges shall constitute a lien upon the property so charged, superior to all other liens except general property taxes. Provided, any levy of special assessments on a front-foot basis on unimproved lots or lands shall not exceed fifty (50) per cent of the rate of assessment levied upon improved lots or land." (Emphasis supplied.)

Ordinance number 1085 reads in part as follows:

"Section 2. There is hereby imposed upon all improved lots or unsubdivided land within the City of Albuquerque, New Mexico, not having water connections which lots or land adjoin or abut upon streets, ways, alleys, boulevards, avenues, roads, or easements, through which water pipes are laid, and from which service thereto is available, an annual charge of twenty-four (24) cents per front foot of such premises so adjoining or abutting upon such streets, ways, alleys, boulevards, avenues, roads, or easements.

"Section 3. There is hereby imposed upon all unimproved lots or unsubdivided land within the City of

Albuquerque, New Mexico, not having water main connections, which lots or land adjoin or abut upon streets, ways, alleys, boulevards, avenues, roads, or easements, through which water main lines are laid, and from which service thereto is available, an annual charge of twelve (12) cents per front foot of such premises so adjoining or abutting upon which streets, ways, alleys, boulevards, avenues, roads, or easements."

This Ordinance was purportedly enacted under the authority of § 14–39–2, N.M.S.A., 1953, which reads:

"All cities and incorporated towns constructing water * * * works are authorized to assess from time to time in such manner as they shall deem equitable, upon each tenement or other place supplied with water, * * * such water * * * rents as may be agreed upon by the council or trustees, or upon each vacant lot in front of which the pipes commonly called 'street mains' are laid, but such vacant lots as do not take water from such street mains shall not be assessed more than one-half as much as may be assessed against the same amount of frontage of lots occupied by a one-story building; * * * and at the regular time of levying taxes in each year, said city or town is hereby empowered to

levy and cause to be collected, in addition to the other taxes authorized to be levied, a special tax on taxable property in said city or town, which tax, with the water * * * rent hereby authorized, shall be *sufficient to pay the expense of running, repairing and operating* such works * * *." (Emphasis supplied.)

Both ordinances are referred to as "stand-by ordinances" inasmuch as they make an assessment or levy a service charge against unconnected property by which the water or sewer pipes run. In other words, the utility, water and sewer, mains *stand-by,* ready to serve the property.

For administering the ordinances, the city adopted certain regulations and created certain exemptions providing that certain classes of property should not be assessed. These exemptions, the city contends, were granted on the assumption that no benefit accrued to the exempted properties. The city directed that there should be no assessment against, for example: 1) presently used or unused parking and storage areas, 2) vacant property adjacent to churches, 3) vacant property adjacent to schools, public or parochial, 4) unimproved properties of the A. T. & S. F. Railway Co. which has its own water supply, and 5) hardship cases. The city also set up cer-

tain regulations providing for assessments against platted and unplatted property.

The plaintiffs (appellees) filed their complaint as a class action, alleging that the charges imposed by the stand-by ordinances are illegal and void as violative of sections 18 and 20 of Article II of the Constitution of New Mexico and the 14th Amendment to the Constitution of the United States because such charges are imposed upon real property connected to sewer or water lines regardless of whether such lines are used by the owners of such property, because they have been administered and enforced in an arbitrary, unreasonable, erroneous, and discriminating manner, because the class of owners of unsubdivided land is compelled to pay more than its just and fair share of such charges, and because there is no benefit conferred upon the real property of such owners. The plaintiffs also alleged that the ordinances are void because they were adopted and put into effect without statutory authority, and asked a permanent injunction restraining the city from enforcing the ordinances or foreclosing any lien pursuant thereto.

The trial court found that the city had authority under §§ 14–40–38 and 14–39–2, N.M.S.A., 1953, to adopt the stand-by ordinances, but that no authority existed by statute nor under the stand-by ordinances to grant the exemptions or to create distinctions applicable to unplatted or unsubdivided lands and not applicable to platted or subdivided lands. The court concluded that the adoption of the stand-by ordinances did not violate the city's authority but that the administration and enforcement with the inclusion of the stated exemptions and regulations constituted unauthorized and unconstitutional action on the part of the city and the court issued a permanent injunction against enforcement of the ordinances.

The City of Albuquerque appealed and asked for reversal on the grounds that the exemptions granted are valid, just, and reasonable; the regulations adopted for the enforcement of the stand-by ordinances are valid and proper; and that the findings of fact and conclusions of law do not support the judgment entered.

The plaintiffs cross-appealed under Supreme Court Rule 17, subd. 2, § 21–2–1 (17) (2), N.M.S.A., 1953, contending that the stand-by ordinances are not authorized by §§ 14–39–2 and 14–40–38, N.M.S.A., 1953, and are unconstitutional because there is no benefit conferred on the property subject to the stand-by charges.

Our conclusions are:

(1) There is authority for the sewer stand-by charge under § 14–40–38, N.M.S.A., 1953;

(2) There is no authority for the water stand-by charge under § 14–39–2, N.M.S.A., 1953;

(3) There is no authority for the exemptions or distinctions;

(4) The unauthorized exemptions and distinctions do not invalidate the ordinance itself and therefore the ordinance number 1075 should stand and only the exemptions and distinctions should be declared invalid;

(5) There is a benefit to the property subject to the sewer stand-by charge and therefore the statute (§ 14–40–38) is constitutional.

Conclusions one and two will be considered together as will conclusions three and four.

It should be noted that the city has constructed its sewer and water facilities by the issuance of water and sewer revenue bonds under the provisions of §§ 14–39–7 through 14–39–13, N.M.S.A., 1953, and §§ 14–39–17 through 14–39–25, N.M.S.A., 1953. Apparently not all of its water and sewer facilities were constructed under the provisions of these revenue bond statutes but, as of June 30, 1957, the city had issued outstanding joint water and sewer revenue bonds in the aggregate principal amount of $5,384,000, the first of these bond issues being dated November 1, 1948, and the last being dated November 1, 1953. The stand-by ordinances hereinabove mentioned assessed charges against property in the areas in which the facilities were constructed with these joint water and sewer revenue bonds.

Chapter 57 of the Laws of 1933 is the authority for the issuance of water and sewer revenue bonds and it should be noted that under this act, the city is required

"to establish such rates for services rendered by such utility as will create an income sufficient to pay all reasonable expenses of operation and create a net revenue which shall be sufficient to pay the interest coupons upon said revenue bonds as they shall mature, and to provide a sinking fund which shall be adequate to discharge said bonds as and when they shall mature, and it shall be their duty to maintain such rates continuously until such bond issue has been fully liquidated." § 14–39–12, N.M.S.A., 1953.

The city stated that the stand-by fee or charge is for:

"the purpose of adequately maintaining and servicing sewer and water lines, and to encourage owners of improved property, in the interests of public health, sanitation and welfare, to take advantage of these utilities constructed for the public use and convenience by connecting their building or houses to the utilities."

If the City of Albuquerque is complying with the mandate of § 14–39–12, sufficient revenues would be forthcoming so that there would be no necessity for the stand-by ordinances. The City Manager testified, however, that the City Commission

did not wish to increase its rates. The plaintiffs, on the other hand, contend that it was obligated to do so if necessary, and that the legislature never intended that stand-by charges were to be levied against nonusers of facilities constructed under the *water and sewer revenue bond act*. We agree with this contention insofar as the water stand-by charge is concerned.

Cities may construct water and sewer facilities with the proceeds of general obligation bonds under the provisions of §§ 14–40–9 through 14–40–15, N.M.S.A., 1953, and under §§ 14–40–35 through 14–40–37, N.M.S.A., 1953.

■ Section 14–40–38 was originally enacted as § 1 of chapter 26 of the Laws of 1891 and § 14–39–2 was originally enacted as § 1 of chapter 37 of the Laws of 1899. It is to be noted that both of the stand-by ordinance statutes were in existence prior to the enactment of either the general obligation bond statute or the water and sewer revenue bond statute, and that § 14–40–15 specifically adopts the provisions of § 14–40–38. The 1933 act, § 14–39–12, N.M.S.A., 1953, makes no reference whatsoever to the stand-by ordinances. It is not consistent with the legislative pattern to apply the water stand-by ordinance to the 1933 act. This lack of legislative intent is made still clearer by § 3 of chapter 149 of the Laws of 1957 wherein § 14–39–2 is made to apply to water mains or lines con-structed under the provisions of §§ 14–40–9 through 14–40–15. Again the legislature failed to make mention of water facilities constructed with revenue bonds. We have no difficulty in holding that § 14–39–2 is not applicable to water facilities constructed under the sewer and water revenue bond act.

■ However the 1941 amendment to § 14–40–38 seems to permit the application of the stand-by charges to sewers constructed with revenue bonds. See chapter 17, Laws of 1941. This act was House Bill 255. It is noted that chapter 18, Laws of 1941 which was House Bill 256 specifically added sewers to the utilities included in § 14–39–8. These amendments we believe express legislative authorization for the sewer stand-by ordinance pursuant to the provisions of § 14–40–38.

■ The city contends that the exemptions, as above stated, were properly made on the theory that no benefit accrued to such property. It is noted that the city also states that the determination that no benefit was received by the exempted properties was based on their present use. Suffice it to say present use of the premises has no bearing on the question of assessable benefit. Rather, the use to which the property may reasonably and legitimately be put governs. Appeal of Public Service Electric & Gas Co., 1952, 18 N.J.Super. 357, 87 A.2d 344; Howard Park Co. v. City of

Los Angeles, 1953, 119 Cal.App.2d 515, 259 P.2d 977; 14 McQuillin, Municipal Corporations 120, § 38.31, (3rd ed. 1950), hereinafter cited as McQuillin.

■■ The general rule is that the express power to assess does not give the power to exempt property from the assessment. There must be express constitutional or statutory authority so to do. Storrie Project Water User's Ass'n v. Gonzales, 1949, 53 N.M. 421, 209 P.2d 530; Town of Clayton v. Colorado & S. R. Co., 10 Cir., 1931, 51 F.2d 977, 82 A.L.R. 417; 14 McQuillin 207–211, § 38.80. We have held our Constitutional exemption from taxation, Article VIII, § 3, does not apply to special assessments, Lake Arthur Drainage Dist. v. Board of Com'rs of Chaves County, 1924, 29 N.M. 219, 222 P. 389, and the 1946 amendment thereto expresses this policy. No statute has been called to our attention which would authorize these exemptions and they are, therefore, unauthorized.

It is to be noted that § 14–40–38, N.M. S.A., 1953, provides for an annual maintenance or service charge to be imposed upon *improved and unimproved lots and land* and that any levy of a special assessment on a front-foot basis on unimproved lots or land shall not exceed fifty (50) per cent of the rate of assessment levied upon improved lots or land.

Ordinance number 1075 provides for an annual twelve (12) cents per front-foot charge on *all improved lots or unsubdivided land* and an annual six (6) cents per front-foot charge upon *all unimproved lots or unsubdivided land*. By reading the language thusly, improved (lots or unsubdivided land) and unimproved (lots or unsubdivided land), the pattern of assessment imposed by the ordinance is consistent with that established by § 14–40–38.

The regulations adopted by the city, however, created distinctions between platted or subdivided property and unplatted or unsubdivided property.

The city assessed platted residential corner property abutting sewer or water lines but unconnected thereto on the basis of the shortest side, whether or not such side abutted the utility line. For example, the regulations stated that a 75' x 100' corner lot would be assessed on the 75 foot frontage regardless of the location of the sewer-water lines, whether they be adjacent to the 75 foot side or the 100 foot side *or both sides*. Unsubdivided residential corner property, whether improved or unimproved, was assessed on all sides abutting the lines. Thus, in certain instances, a charge was imposed on unimproved land equal to or greater than the charge imposed on improved land in violation of the express proviso of § 14–40–38. For example, using the 75' x 100' lot mentioned above, the assessments where the corner lot or tract of land abutted intersecting sewer lines would be:

Improved platted residential corner lot _____ 75' x .12 = $9.00
Unimproved unplatted or unsubdivided residential
    corner tract of same size _____ 75' x .06 = $4.50
                                                    100' x .06 = 6.00

                                                       $10.50

The reason for these distinctions the city stated was because in the case of platted or subdivided lots the "frontage" is readily ascertainable whereas in the case of large tracts of unsubdivided land there are no lots and therefore no fronts of lots. Hence, the "frontage" of unsubdivided tracts was considered to be the actual property line which abutted upon streets containing water and sewer lines. The city officials testified, however, that with regard to the stand-by charges the benefit was equal whether or not the property abutting the sewer and water lines was subdivided or unsubdivided.

■ We therefore conclude no authority existed by statute to create such distinctions applicable to unplatted or unsubdivided lands and not applicable to platted or subdivided lands.

■ The unauthorized exemptions and distinctions, however, do not invalidate the Ordinance number 1075 as contended by appellees. Nothing in the statute nor the ordinance itself is discriminatory or unauthorized so as to require its invalida-

tion. If the court in an equitable proceeding such as this may enjoin the enforcement of an illegal part of an assessment and uphold the valid part where severable from the invalid part then surely it may uphold a valid assessment ordinance and strike down discriminatory and unauthorized regulations enforcing it. 14 McQuillin 425–426, 491, §§ 38.177, 38.206; Struble v. City of Cincinnati, 1948, 83 Ohio App. 304, 82 N.E.2d 127, appeal dismissed 149 Ohio St. 582, 79 N.E.2d 910; Hills v. City of Rahway, 1953, 29 N.J.Super. 16, 101 A.2d 563; Smith v. City of Parkersburg, 1943, 125 W.Va. 415, 24 S.E.2d 588; McCaskill v. City of Homestead, 1948, 160 Fla. 662, 36 So.2d 272.

■ The plaintiffs contend that there was no benefit and none could be conferred on the property subject to the stand-by ordinance and that the ordinance is therefore invalid on a constitutional ground. It is settled that unconnected property accessible to a sewer main may be assessed for the special benefits accruing from its construction. Appeal of Public Service Electric & Gas Co., supra; 14 McQuillin 100,

§ 38.24; 1 Page & Jones, Taxation By Assessment 917, § 563 (1909). We feel that continued maintenance is a sufficient benefit and a proper basis for the assessment. Cf. Parsons v. District of Columbia, 1898, 170 U.S. 45, 18 S.Ct. 521, 42 L.Ed 943; Batterman v. City of New York, 1901, 65 App.Div. 576, 73 N.Y.S. 44; Smith v. Mayor and Aldermen of Worcester, 1902, 182 Mass. 232, 65 N.E. 40, 59 L.R.A. 728; Carson v. Sewer Commissioners of Brockton, 1901, 182 U.S. 398, 404–405, 21 S.Ct. 860, 862–863, 45 L.Ed. 1151, 1155; 2 Cooley On Taxation 1171, 1175, 1177 (3rd ed. 1903); Contra, Hamilton, Law of Taxation By Special Assessments 577, § 598 (1907) citing the strict Pennsylvania rule.

In 14 McQuillin, § 38.25, it is stated at pages 101–102:

"Under the usual grant of power, special assessments cannot be levied to pay for reconstructing or repairing a sewer, even though additional benefits thereby accrue."

The implication is clear that if the legislature, as here, expressly authorizes an assessment for maintenance or repair the municipality has the power to impose a special assessment therefor. Cf. Verdin v. City of St. Louis, Mo., 1894, 27 S.W. 447, 451.

The decision of the lower court will be reversed for the reasons hereinabove set forth and the cause will be remanded with instructions for further proceedings not inconsistent with this opinion.

It is so ordered.

LUJAN, C. J., and SADLER and COMPTON, JJ., concur.

CARMODY, J., not participating.