**OKLAHOMA CITY HOTEL & MOTOR HOTEL ASSOCIATION, INC.,
et al., Appellants,**

**v.**

**The OKLAHOMA CITY, a municipal
corporation, Appellee.**

**No. 45463.**

Supreme Court of Oklahoma.

July 16, 1974.

Rehearing Denied Oct. 8, 1974.

Clyde J. Watts, Jay M. Galt, Oklahoma City, for Oklahoma City Hotel & Motor Hotel Association, Inc.

David M. Harbour of Cantrell, Douglass, Thompson & Wilson, Oklahoma City, for Apartment Council of Home Builders Assn. of Greater Oklahoma City, Inc.

Terry T. Wiens, Cantrell, Douglass, Thompson & Wilson, Oklahoma City, for

Oklahoma Mobile Home and Trailer Park Operators Assn.

Walter M. Powell, Municipal Counselor, City of Oklahoma City, Oklahoma City, for appellee.

SIMMS, Justice:

The question in this case is whether the rates or classifications given by Defendant City to apartment houses, mobile home parks, and hotels and motels constitutes an unlawful discrimination against them.

Plaintiffs bring this suit against the Defendant City to determine the validity of city ordinances numbers 12927, 12928, 12929, passed on July 20, 1971, fixing rates for garbage, water, and sewer services provided by the City. Plaintiffs pray for a declaratory judgment declaring the ordinances void and for an injunction prohibiting the City from enforcing the ordinances.

The ordinances in question are attacked by the Plaintiffs on three grounds: (1) that a classification of apartments, mobile home parks, and hotels and motels separate from other commercial users constitutes an unreasonable discrimination in violation of the equal protection clause of the 14th Amendment; (2) that the ordinances exacting additional per-unit charges from apartments, mobile home parks, and hotels and motels, but not from other commercial users, constitutes a tax to cover general obligations of the city, under the guise of a service charge; (3) the mobile home parks also urge that they should have been given notice and opportunity to be heard when the City held its meeting to change the classifications. The trial court held the ordinances were valid and enforceable.

ORDINANCE NO. 12927 provides for minimum/maximum charges for garbage service. Actual charges for commercial users, including hotels and motels, are based upon the size of the containers and number of weekly pickups. Single family residences are charged from $2.50 to $5.00 per month depending on the type of service. Multiple dwelling units, including apartments, are charged on a per unit basis at the lowest rate for single

family residences, regardless of whether the units or lots are rented or vacant.

ORDINANCE NO. 12928 provides a uniform charge to all water users at specified rates per 1000 gallons, with decreasing rates for increased volume.

There is an additional charge of $1.00 per month for each mobile home park lot or apartment unit, and $1.00 per month for each hotel and motel unit with kitchen or "family function" privileges (housekeeping units). Sleeping units in hotels and motels are charged an additional $.25 per month. The additional charges are levied regardless of whether the units or lots are rented or vacant.

ORDINANCE NO. 12929 provides sewerage charges for residential users at $1.75 per month for single family units; $1.75 per month for each apartment unit; $1.75 per month for each hotel or motel housekeeping unit; $1.00 per month for each hotel or motel sleeping unit. Except for single family residences, the charges are levied regardless of whether the units or lots are rented or vacant. Charges to all other users are based upon the size of the water meter and amount of water being used.

Prior to the passage of the above ordinances, the rates for garbage, water, and sewer were the same for Plaintiffs as for all other commercial users.

The City Manager for the Defendant City testified that he recommended the increase in rates based upon the change in classification for two reasons: (1) The City needed $1.2 million additional revenue for police, fire, and sanitation personnel, and for an increased contribution to city employees for salaries and fringe benefits; (2) to correct an inequity in garbage, water, and sewer rates caused by a lower rate to apartments, hotels, and motels than to single family residences, resulting in discrimination against residents in single family units. The City Manager stated that he did not consider any factor of additional costs in furnishing services to single fami-

ly residences as opposed to multiple unit dwellings served by a single meter.

■■ The City contends that the fixing of rates of municipally owned utilities is a legislative function and in the absence of a clear showing that the rates are unjust, unreasonable, or discriminatory, the courts may not interfere. Knotts v. Nollen, 206 Iowa 261, 218 N.W. 563 (1928); Rhyne, Municipal Law, Sec. 23–27 (1957); 12 McQuillin, Municipal Corporations, Sec. 35.37(a). We agree with this general rule. We also believe that the review of the regulations on rates established by privately or publicly owned utilities is ultimately the Court's duty. An individual or group that feels discriminated against cannot look to the competition for redress. He must look to the regulating body, or to the courts. Review will act as the substitute for competition.

Cases in numerous other jurisdictions are cited wherein the courts have held reasonable, rate-making ordinances classifying apartments, hotels and motels, and mobile home parks separate from other commercial users and similar to single family residences. Knotts v. Nollen, *supra*; Fort Collins Motor Homes, Inc. v. City of Fort Collins, 30 Colo.App. 445, 496 P.2d 1074 (1972); Lewis v. Mayor and City Council of Cumberland, 189 Md. 58, 54 A. 2d 319 (1947); Caldwell v. City of Abilene, Tex.Civ.App., 260 S.W.2d 712 (1953); Kermit v. Rush, Tex.Civ.App., 351 S.W.2d 598 (1961); Oradell Village v. Township of Wayne, 98 N.J.Super. 8, 235 A.2d 905 (1967); Land v. City of Grandville, 2 Mich.App. 681, 141 N.W.2d 370 (1966). These cases are based on the theory that the ultimate use or ultimate consumer of the water is a reasonable basis for classification. Apartments, hotels and motels, and mobile home parks were considered by those courts to be aggregations of dwellings, rather than businesses. The courts generally stated that it would be unfair to single family dwellings if apartments, etc., were classified differently. In some of the cases, the courts agreed that the rate classification resulted in discrimination, but

held that the discrimination was not unreasonable or unjust. See, Caldwell v. City of Abilene, *supra*; Knotts v. Nollen, *supra*.

■ In Fretz v. City of Edmond, 66 Okl. 262, 168 P. 800 (1916), this Court asserted that a municipality operating a utility is governed by the same restrictions as private utility corporations, in practices of discrimination in rates and service. It was also stated in *Fretz*:

" . . . the rule is not that there must not be any discrimination of any kind, but that there must be no unjust discrimination."

There is little question that discrimination exists in the instant case between apartments, hotels and motels, and mobile home parks on one hand, and other commercial volume users on the other. The cost of providing the services for both classes of consumers is the same. Both classes are large volume consumers; both classes get their water through a single meter, obviating the requirement that the City maintain a meter for every unit; both classes are mailed only one bill per month and need look to only one person for payment. The question we must decide then, is whether the discrimination based upon the scheme of classification is unreasonable or unjust.

■ In determining whether discrimination exists in a classification scheme, it is not enough to point to the similarities between the particular classes (i.e., apartments and single family residences); the classification must be based upon *substantial differences* as grounds for the distinction. "A classification based on a particular business or use for a special purpose will not, without more, justify classification or discriminatory rates." American Aniline Products v. City of Lock Haven, 288 Pa. 420, 135 A. 726 (1927); Kliks v. Dalles City, 216 Or. 160, 335 P.2d 366, 375 (1959).

■ In the *Kliks* case, supra, the Supreme Court of Oregon considered the question of whether a municipal utility unreasonably discriminated against apartment owners by placing them in a class similar to single family residences while placing hotels, motels, and mobile home parks in a more favorable classification similar to other commercial users:

"Insofar as municipal utility rates are concerned, this means that a difference in rates must find justification in 'a difference in conditions of service. * * *' "

"It is not enough simply to point to a difference of any kind between apartment houses and hotels; the dissimilarities must be those which will justify a difference in the charge for the water · supplied. * * *"

"The defendants argue that an apartment house is in effect a group of residences under a single roof, and that therefore the units in the apartment building may be treated as separate residences in making up a water rate schedule. But it is not enough to show the similarity between the occupancy of apartment units and occupancy of separately roofed dwellings. As already stated, a valid classification must be based upon substantial differences and, since it seems clear that the operation of an apartment house is at least prima facie a commercial use of property . . . [W]e must therefore seek differences which will justify drawing a line between the plaintiffs' use and other commercial uses of property in the city." 335 P.2d, at 374, 375.

Essentially, then, *Kliks* holds that the cost of providing the service is the only basis for classification. However, in applying the rule that the courts may only interfere with municipal rate classifications where the rates are unreasonably discriminatory, we must consider whether there are other factors that will justify one rate for apartments, hotels and motels, and mobile homes, and another rate for commercial users. The ultimate consumer or ultimate use of the water or service is, under the circumstances of this case, a reasonable basis for classification.

The ultimate consumer theory has been applied to uphold rates in Oradell Village v. Township of Wayne, 98 N.J.Super. 8,

235 A.2d 905 (1967), which rejected the *Kliks* case as the sole test for rate-making:

"An apartment house is an aggregation of dwellings. The rate charged a family living in a multi-family dwelling should be essentially the same as that charged a family occupying a residence. It seems entirely reasonable to adopt a classification which takes account of the ultimate consumer, rather than a classification limited solely to a consideration of the utility's operating cost. It is the consumer who will bear the ultimate economic impact of the charge. The increased rate will presumably be passed on by the apartment owner to the tenants, either in the form of increased rent or otherwise. The result seems eminently fair."

Likewise, Kermit v. Rush, Tex.Civ.App., 351 S.W.2d 598 (1968), which was decided after *Kliks*, held:

"Evidence failed to establish arbitrary or unreasonable enforcement of ordinance requiring each separate house, residence, apartment building, structure, trailer house, and/or mobile home to have separate water meter or pay separate monthly minimum charge for water."

And, in Fort Collins Motor Homes, Inc. v. City of Fort Collins, 30 Colo.App. 445, 496 P.2d 1074, 1076 (1972), the Colorado Court of Appeals stated:

"From the record it appears that prior to the passage of Ordinance No. 33, 1969, apartment houses and mobile home courts were treated as commercial consumers. This meant that a group of living units in an apartment house or mobile home complex could, in effect, 'pool' their water use and take advantage of lower bulk rates afforded commercial users. The result of this, as demonstrated in the water rate analysis, was that individual users in trailer parks and apartments could pay as little as 65¢ per month for water service. The water rates for metered and unmetered single family residences were much higher. The trial court noted that, prior to the adoption of the new ordinance, there was a substantial discrimination in favor of the apartment or mobile home dweller and against the single family residence owner. It was this discrimination that Ordinance No. 33, 1969, was designed to remedy . . . and we find no error in the trial court's determination that there was no unlawful discrimination in the classifications established by the ordinance in question."

■ By considering the ultimate consumer of the water or the service, we are forced to conclude that there are substantial differences between apartments and mobile home parks on the one hand and other volume commercial users on the other that will justify the rate classifications in the instant case. An apartment house is an aggregation of dwellings and it is not unreasonable to classify it with other dwellings rather than with hotels. Likewise, mobile home parks while having some of the attributes of other commercial users, can be reasonably classified separately from commercial users.

■ It is unreasonable, however, in considering the ultimate consumer as a factor for classifying customers, to put hotels and motels in a class different than other commercial volume users. The differences are too tenuous to justify a separate classification. The mere fact that people sleep in motels and hotels does not place them in the same class as single family dwellings, nor does it separate them from office buildings for instance. For example, in the case of sleeping rooms in hotels or motels, an additional per room charge is levied for water and sewer service in spite of the fact that the room may not have water or sewer service. Moreover, the guests of hotels and motels are transient in nature, lending to the commercial classification.

We are bound by the time-honored principle that "[t]he presumption is in favor of the rate or regulation, and the court may interfere only in a clear case of violation of legal rights." Knotts v. Nollen, *supra*. The determination is a legislative one rather than judicial. Lewis v. Mayor and City Council of Cumberland, 189 Md. 58, 54 A.

2d 319 (1947); Fretz v. City of Edmond, *supra*.

It is held that the classifications the City has imposed on its water, sewer, and garbage rate structure, insofar as hotels and motels are concerned are arbitrary and unjustly discriminatory under the Fourteenth Amendment to the United States Constitution. The rate structure for apartments and mobile home parks, while discriminatory, is not so unreasonable as to justify our holding it unconstitutional and those rates are therefore affirmed.

█ Plaintiffs further urge that the ordinances in question are void as rate-making ordinances since the admitted purpose of the ordinances are to raise money for the general revenue fund of the City. Plaintiffs reason that general revenue should be raised by means of a tax, not through additional charges for utility services. It is argued that any charges for utility services must be related to the utility's function as a utility. Charges for utility services should not, it is urged, be related to the City's function as a taxing authority.

This Court approved in Sharp v. Hall, 198 Okl. 678, 181 P.2d 972 (1947), the excess profits from operating a municipal utility going to the general revenue fund. This theory is in accordance with established procedure. McQuillin, Municipal Corporations, 35.37(c).

The ordinances in question, therefore, do not constitute taxes.

Trial Court Affirmed in Part, and Reversed in Part. Remanded with Directions to Enter an Injunction Prohibiting the Enforcement of the ordinances discriminatorily applied to hotels and motels.

Justice HODGES certified his disqualification in this case, and Judge C. J. BLISS, having been Specially Assigned in his stead.

DAVISON, C. J., WILLIAMS, V. C. J., BERRY, LAVENDER, BARNES and DOOLIN, JJ., and BLISS, Specially Assigned Justice, concur.

IRWIN, J., not participating.