Dear Senator Anderson:
This office has received your letter requesting an official Attorney General Opinion in which you ask, in effect, the following question:
 Assuming that a city has a water supply available to households within territory annexed by the city, may the city enact an ordinance requiring those households to pay a monthly fee to defray the costs associated with construction of a water treatment plant when those households choose not to obtain their water supply from the city?[1]
Your question requires an analysis of the rights and powers of a city with regard to the provision of a water supply system within its corporate limits, and whether those powers allow a city to charge residents for services that are available, but not used. The fee you describe is sometimes referred to as a "standby charge" or "service availability fee." See Kennedy v. City ofUkiah, 138 Cal. Rptr. 207, 210 (Cal. Ct. App. 1977);Chapman v. City of Albuquerque, 335 P.2d 558, 561 (N.M. 1959). The purpose of imposing such fees may be to defray the costs associated with the construction, operation or maintenance of a city water supply system. See id. at 559. *Page 2 
 A MUNICIPALITY'S POWER TO PROVIDE PUBLIC UTILITIES
Article X, Section 27 of the Oklahoma Constitution authorizes an incorporated city to incur indebtedness for the purpose of purchasing, constructing, or maintaining public utilities. Section 27A of the Constitution specifically authorizes an incorporated city to pledge revenues for the purpose of "purchasing water, constructing, acquiring, or operating water facilities, or purchasing or leasing reservoir space." Id. A city may issue bonds "secured by revenues derived from the sale of water for the joint construction, acquisition, repair, extension or improvement of said water facilities; and thereafter enact ordinances giving effect to the provisions of this section."Id. Sections 6 and 7 of Article XVIII authorize a city to engage in the business of supplying water, and prohibit the city from surrendering its power to regulate the charges for public services. Id.
The Oklahoma Municipal Code grants a city broad powers with regard to municipal functions such as the provision of a water supply.
 The municipal governing body may enact ordinances, rules and regulations not inconsistent with the Constitution and laws of Oklahoma for any purpose mentioned in Title 11 of the Oklahoma Statutes or for carrying out their municipal functions.
11 O.S. 2001, § 14-101.A[11-14-101.A] city is authorized "to do all things necessary and proper in the discretion of the governing body of the municipality pursuant to the authority granted to it by the Constitution and laws of this state to maintain said business or enterprise for the benefit of the municipality[.]"Id. § 22-104(1).
Subsection 6 of Section 22-104 further provides that the municipality may:
 Sell or lease to any consumer . . . within or without its boundaries, the commodities and services supplied by such municipally owned or controlled public utility, business enterprise, or improvement and to enter into such short-or long-term contracts, agreements, and stipulations and do all things necessary and proper to further the capability of the municipality pursuant to the authority granted to it by the Oklahoma Statutes and the Constitution of this state to provide said commodities and services as may be deemed appropriate by the governing body of the municipality[.]
Id. Section 37-102 of the Oklahoma Municipal Code specifically addresses the power of a city to provide a water supply system.
 The municipal governing body may purchase, erect, lease, rent, manage, and maintain any system or part of a system of waterworks and water supply. . . .The governing body may pass all ordinances, penal or otherwise, that are necessary and proper for the full protection, maintenance, management, and control of said facilities, may make *Page 3 
provisions for taxes for these purposes, and may do all things necessary and proper in its discretion to exercise the powers authorized by the Constitution and laws of this state and to further the ability of the municipality to provide water supplies, services, and facilities.
Id.
While Oklahoma law does not expressly authorize a city to impose a standby or availability charge, both the Oklahoma Constitution and the statutes grant a city broad powers with regard to its provision of public services to its residents. The Legislature's repeated use of the language "all things necessary and proper in its discretion" indicates the Legislature's intent to allow a city broad latitude in the methods it employs to support the provision of public utilities such as a water supply system. See id.
Further, "[i]t seems clear that from expressed grants of power there may arise implied powers to do the things necessary and proper to the complete enjoyment of the powers expressly granted."State ex. rel. Woods v. Cole, 63 P.2d 730, 733 (Okla. 1936). The ability to impose a fee on persons who choose not to use the available city water supply may be fairly implied from the express powers granted by the Constitution and statutes. See Seltzer v.Sterling Township, 123 N.W.2d 722, 724-25 (Mich. 1963) (privilege fee for water availability may be imposed by ordinance on developer constructing homes on platted lots within a township to finance the acquisition of capital equipment for the water system); Ricks v.Selma, 392 S.E.2d 437, 439-40 (N.C. Ct. App. 1990) (city may impose availability charge for sewer services on residents of annexed territory who were served by private septic tanks);Horton v. Carroll County,968 S.W.2d 841, 845 (Tenn. Ct. App. 1997) (county could require rural residents who disposed of their own garbage to pay solid waste disposal fee).
Ricks held that statutory language of "for the use of or the services furnished by" could be broadly interpreted to include making a service available even if the service was not used.Id., 392 S.E.2d at 439 (citation omitted). Likewise,Horton defined language of "any services rendered" as broad enough to include the availability of the service. Id.,968 S.W.2d at 846. The language in Oklahoma statutes of "services supplied" and "to provide said commodities and services" may also be fairly interpreted to allow a city to impose a fee to defray the cost of a water supply system that is available to, but not used by, residents of the city. 11 O.S. 2001, § 22-104[11-22-104](6).
A city has broad discretion in establishing fees for the public utilities it supplies to its residents, provided that the fees are not unjust, unreasonable, or discriminatory. Okla. CityHotel Motor Hotel Ass'n v. Okla. City, 531 P.2d. 316 (Okla. 1974). The Oklahoma Supreme Court affirmed Oklahoma City's water, sewer, and garbage rate structure for apartments and mobile home parks, but found that the city's rate structure for hotels and motels was "arbitrary and unjustly discriminatory." Id. at 321. The court recognized that "the fixing of rates of municipally owned utilities is a legislative function and in the absence of a clear showing that the rates are unjust, unreasonable, or discriminatory, the courts may not interfere." Id. at 318.
 AVAILABILITY OF A WATER SUPPLY *Page 4 
The analysis in this Opinion assumes that a city seeking to impose an availability fee has an available water supply. Federal courts have ruled on the issue of availability of a water supply in the context of whether a rural water district indebted to the Farmer's Home Administration is entitled to the protection of 7 U.S.C. § 1926(b), which gives the rural water district exclusive rights to provide water within its service area. See, e.g., Sequoyah County Rural Water Dist. No. 7 v. Townof Muldrow, 191 F.3d 1192, 1203 (10th Cir. 1999). The courts have applied a "pipes-in-the-ground" test, considering whether the rural water district "has proximate and adequate `pipes in the ground' with which it has served or can serve the disputed customers within a reasonable time." Id. Courts have also considered the cost of water, holding that even if the supplier has adequate and proximate facilities, water is not available if the cost is excessively high.Pittsburg County Rural Water Dist. No. 7 v. City ofMcAlester, 358 F.3d 694, 719 (10th Cir. 2004).
The Texas Court of Appeals provides similar guidance in the context of an availability fee. See McMillan v. Tex. Natural Res.Conservation Comm'n, 983 S.W.2d 359, 362-63 (Tex. App. 1998). Texas law authorizes a municipal utility to impose a standby fee on undeveloped property provided that services areavailable. TEX. WATER CODE ANN. § 49.231(a)(1) (Vernon 2008). The statute does not define the term "available." See id. The Texas Court of Appeals, applying the ordinary meaning of the term, upheld the Water Commission's interpretation of "available" to mean "present or ready for immediate use." McMillan, 983 S.W.2d at 363. The statute describes availability in terms of the water supply system having sufficient capacity to serve the property, and the existence of major water supply lines with sufficient capacity to serve the property. TEX. WATER CODE ANN. § 49.231(a)(2)(B), (C) (Vernon 2008). The court held that the district could not assess standby fees on non-users if the current demand exceeded the existing available capacity. McMillan, 983 S.W.2d at 363.
Some cities may have a local ordinance defining "available." For example, a Guthrie city ordinance states, "A public water main or public sewer system shall be considered available to a building when the building is located with[in] 300 feet of the public water main or sewer." GUTHRIE, OKLA., PLUMBING CODE § 4-37(B) (2006). To determine whether a particular water supply is available, one must examine applicable city ordinances and the specific facts in the case. Such determinations are beyond the scope of this Opinion.See 74 O.S. 2001, § 18b[74-18b](A)(5).
Although some households in the annexed territory choose not to obtain their water supply from the city, as residents within the corporate limits of the city those households receive the benefit of the availability of city water. That benefit comes with the burden of sharing in the city's cost of making the water available. "The availability charge can cover those costs of operating the system that are not tied to actual use." Ricks, 392 S.E.2d at 440. Such benefits may include increased value to the property and use of the city water supply system for fire protection. See Smith v.Norton, 138 N.W.2d 522, 523 (Mich. Ct. App. 1965) (municipal water line abutting on property owners "adds to the value of said property and would provide a service to said property even though said property owners had not hooked up to the municipal water supply"); Airwick Indus., Inc. v. Carlstadt Sewerage Auth.,270 A.2d 18, 25 (N.J. 1970) (all properties to which service is available should share in the costs of *Page 5 
construction and installation as all properties receive some benefit and increase in value regardless of whether they actually use the system); Samis Land Co., v. Soap Lake,23 P.3d 477, 491 (Wash. 2001) (property owners benefit from the availability of clean water sources and accessibility of city waterlines for fire protection). Assuming that a city has a water supply available to its residents, a city has broad power to enact an ordinance that imposes a fee on all residents within its corporate limits to defray the costs associated with construction of a water treatment plant.[2] The rate charged may not be unjust, unreasonable or discriminatory. Although some residents may choose to obtain their water supply from alternative sources, they receive benefits from the availability of an improved water supply system. Whether a water supply is available, and whether the fee charged is unjust, unreasonable, or discriminatory are questions of fact beyond the scope of this Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
It is, therefore, the official Opinion of the Attorney Generalthat:
 1. A city has broad powers under the Oklahoma Constitution and statutes to do "all things necessary and proper in its discretion" to provide public utilities such as a water supply system to residents within its incorporated limits, including annexed territory. OKLA. CONST. art X, §§ 27, 27A; OKLA. CONST. art XVIII, §§ 6-7; 11 O.S. 2001, §§ 14-101[11-14-101], 22-104, 37-102.
 2. While Oklahoma law does not expressly authorize a city to enact an ordinance that imposes a fee to defray the costs associated with construction of a water treatment plant on persons residing within annexed territories who choose not to use the city water supply, the power may be fairly implied from the express grant of powers. State ex. rel Woods v. Cole, 63 P.2d 730, 733 (Okla. 1936).
 3. Availability or standby fees may not be unjust, unreasonable, or discriminatory. Okla. City Hotel Motor Hotel Ass'n, Inc. v. Okla. City, 531 P.2d. 316, 318 (Okla. 1974). Whether a particular fee is unjust, unreasonable, or discriminatory is a question of fact beyond the scope of this Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5). *Page 6 
 4. The above conclusions are based on the assumption that a city has a water supply available to those residents who choose not to use city water. This Opinion does not address whether a city may impose a service availability fee when the city does not have a water supply available. Whether a water supply is available is a question of fact beyond the scope of this Opinion. 74 O.S. 2001, § 18b[74-18b](A)(5).
W.A. DREW EDMONDSON ATTORNEY GENERAL OF OKLAHOMA
SANDRA BALZER ASSISTANT ATTORNEY GENERAL
[1] For purposes of this analysis, we revised your question to include the assumption that the city has a water supply available to supply households in the annexed area. Therefore, this Opinion does not address whether a city may impose a service availability fee when the city does not have a water supply available.
[2] This conclusion applies regardless of whether the water supply is provided by the city or a municipal trust. See
60 O.S. 2001 Supp. 2008, §§ 176-180.4 (Section 180.4 was found unconstitutional in Oklahoma County Utility Services Authority v.Corporation Commission, 519 P.2d 919 (Okla. 1974). *Page 1