**E. O. GILLAM et al., Appellants,**

v.

**CITY OF FORT WORTH et al., Appellees.**

No. 15674.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 27, 1956.

Rehearing Denied March 2, 1956.

Ernest May, Fort Worth, for appellants.

R. E. Rouer, S. G. Johndroe, Jr., Robert R. Goodrich, G. Gordon Whitman, Earl C. Morgan, and John Gano, Fort Worth, for appellee, City of Fort Worth.

Cantey, Hanger, Johnson, Scarborough & Gooch, Frank E. Crumley and George R. Bridgman, Fort Worth, for appellee, Town of Westover Hills.

BOYD, Justice.

Appellants, E. O. Gillam and wife, Merl Gillam, James Athans, William P. Engelfried, W. J. Brown, A. P. Ticknor and wife, Jane Ticknor, Roy Gilley, E. D. Bullard and O. J. Price, filed suit for a judgment declaring that the rates established by the water rate ordinance of appellee, City of Fort Worth, hereinafter called the City, are neither equal nor uniform; that the ordinance contravenes the requirement that equal and uniform rates be sufficient to pay the cost of supplying water to any customer; that a contract entered into by the City and appellee, the Town of Westover Hills, hereinafter called the Town, by which the City agreed to furnish water to the Town, is ultra vires; that the execution and performance of such contract constitute an abuse of corporate power; and that the contract is illegal in that it allows discrimination against other water customers of the City.

It was alleged that all the appellants except E. D. Bullard and O. J. Price are resident taxpayers of the City, that all appellants are consumers of water supplied by the City, and that none has any other available water supply. It was alleged that all of the appellants who are resident taxpayers of the City, except Roy Gilley, presented to the City's Attorney a written request that he proceed under Section 5, Chapter 6, of the City Charter, to seek injunctive relief with reference to the subject matter of this suit; that the City Attorney refused to comply with that request, and that all the appellants signatory to the request filed the suit on behalf of the City as well as for themselves.

In refusing the declaratory decree, the court found and held that (1) the water rates are equal and uniform; (2) they do not contravene the lawful requirement that equal and uniform rates be sufficient to pay the cost of supplying water to any customer; (3) the contract to supply water to the Town is not ultra vires; (4) its execution and performance do not constitute an abuse of corporate power; and (5) the contract is not illegal as allowing discrimination against other customers. By appropriate points, appellants challenge such findings and holdings of the court.

Section VI of the questioned ordinance is as follows:

" 'The following rates per month, or fraction thereof, shall be the rates charged for water furnished to water consumers within the corporate limits of the City of Fort Worth:

| " 'Cubic Feet | | Rate | |
|---|---|---|---|
| " 'First | 266–⅔ cubic feet | $1.00 | Minimum |
| " 'Next | 49,733–⅓ cubic feet | .21 | per 100 cubic feet |
| " ' " | 40,000 cubic feet | ..1875 | per 100 cubic feet |
| " ' " | 43,333–⅓ cubic feet | .15 | per 100 cubic feet |
| " ' " | 133,333–⅓ cubic feet | .1125 | per 100 cubic feet |
| " ' " | 400,000 cubic feet | .075 | per 100 cubic feet |
| " 'For all in excess of 666,666⅔ cubic feet of water used per month | | .0675 | per 100 cubic feet' " |

By the terms of the ordinance, the rates charged for water furnished for use on premises outside the corporate limits of Fort Worth shall be double the rates charged for water furnished for use on premises within the corporate limits of Fort Worth.

Section VIII of the ordinance is in part as follows: " 'Nothing in this section or any other section of this ordinance or any other ordinance shall be construed to compel the City Water Works to furnish consumers beyond the corporate limits or to continue such supply once begun; and the City Water Works reserves the right to furnish such customers it deems advisable and to, at any time, wholly or partially discontinue the supply upon violation of any of the terms of this ordinance the same as though such consumer resided in the City.' "

Article 1109a, § 2, R.C.S., Vernon's Ann. Civ.St., provides in part that, "The rates charged for services furnished by said system shall be equal and uniform, and no free service shall ever be allowed, except in the discretion of the governing body, for city public schools, or buildings and institutions operated by such city, and there shall be charged and collected for such services a sufficient rate to pay for all operating, maintenance, depreciation, replacement, betterment and interest charges, and for an interest and sinking fund sufficient to pay any bonds or notes issued to purchase, construct or improve such system or any outstanding indebtedness against same."

■ "It is well established that a municipal corporation operating its water works or other public utility has the right to classify consumers under reasonable classification based upon such factors as the cost of service, the purpose for which the service or product is received, the quantity or amount received, the different character of the service furnished, the time of its use or any other matter which presents a substantial difference as a ground of distinction. 73 C.J.S., Public Utilities, § 27, p. 1049; 43 Am.Jur., 689; American Aniline Products, Inc., v. City of Lock Haven, 288 Pa. 420, 135 A. 726, 50 A.L.R. 121.". Caldwell v. City of Abilene, Tex.Civ.App., 260 S.W.2d

712, 714, writ refused. See, also, Texas Power & Light Co. v. Doering Hotel Co., Tex.Civ.App., 147 S.W.2d 897; Id., 139 Tex. 351, 162 S.W.2d 938; Western Union Telegraph Co. v. Call Publishing Co., 181 U.S. 92, 21 S.Ct. 561, 45 L.Ed. 765; Botkin v. City of Abilene, Tex.Civ.App., 262 S.W. 2d 732, and Silkman v. Board of Water Commissioners of City of Yonkers, 152 N. Y. 327, 46 N.E. 612, 37 L.R.A. 827.

■■ Whether differences in rates between classes of customers are to be made, and, if so, the amount of the differences, are legislative rather than judicial questions, and are for the determination of the governing bodies of the municipalities. The presumption is in favor of the legality of the rates established by the rate-making authority, and courts may interfere only in clear cases of illegality. Knotts v. Nollen, 206 Iowa 261, 218 N.W. 563. The burden of proof is upon the party alleging that the discrimination is illegal to show that the difference in rates is disproportionate to the difference in conditions. Ford v. Rio Grande Valley Gas Co., 141 Tex. 525, 174 S.W.2d 479; Western Union Telegraph Co. v. Call Publishing Co., supra.

We are of the opinion that the trial court was justified in declining to hold that the rates established by the ordinance lacked the requirements of equality and uniformity.

■ We think it was not shown by a preponderance of the evidence that the discrimination in rates charged to different classes of customers is arbitrary, capricious, or unreasonable. It is only unreasonable discrimination that is condemned by the law. City of Fort Worth v. Westchester House, Inc., Tex.Civ.App., 274 S.W.2d 732. The City Council had the power to establish a rate structure. It was appellants' burden to show that where there is a difference in rates charged to different classes of customers, the distinction is not justified by the difference in the factors properly to be considered in setting up the structure. It is not the province of the courts to decide whether the classifications made and the rate schedule adopted are the

proper ones to be made and adopted. The trial court found that appellants failed to establish by a preponderance of the evidence that the classifications and the rate structure based thereon were unlawful. Under the record before us, we cannot say that the court erred in that finding.

■ Appellants urge that the ordinance contravenes the lawful requirement that equal and uniform rates must be sufficient to pay the cost of supplying water to any consumer. Admittedly, free service shall not be allowed. According to the stipulation of the parties, the proceeds from the water rates established by the ordinance "provide sufficient revenue to the Fort Worth City Water Works to pay for all its operation, maintenance, depreciation, replacement, betterment and interest charges, and for an interest and sinking fund sufficient to pay any bonds or notes issued to purchase, construct or improve its system or the outstanding indebtedness against same." The court found that the rates "do not contravene the lawful requirement that equal and uniform rates be sufficient to pay the cost of supplying water to any consumer." We are unable to find any evidence in the record that would compel a finding that the rates were insufficient to pay that cost. Moreover, we do not think the evidence reflects the cost of supplying water to any consumer, large or small.

Appellants base their contention in this respect upon figures submitted by the Director of the City's Water Department in the budget estimate for the fiscal year October 1, 1953, through September 30, 1954. This estimate was based upon the 1951 pumpage figures. As we understand this analysis, it was the estimated cost of operating the Water Department, and shows that the City would expend an average of 27.2 cents per 1,000 gallons of water sold. This estimated amount covered maintenance and operation, capital improvements, sanitary sewer deficit, water bond debt service, retirement and miscellaneous. We do not think that the cost of supplying water to any consumer can be ascertained from that estimate.

It is pointed out by appellants that the estimate made by the Director of the Water Department was based upon the anticipated sale of 15,000,000,000 gallons, and that the sales were less than that. They also point out that the Water Department spent more during the fiscal year than the Director had estimated. They therefore say that the average cost of operating the Department was more than 27.2 cents per 1,000 gallons sold. Assuming the correctness of this position, we are unable to say that a preponderance of the evidence showed that any free service was allowed. The actual cost of supplying water to those consumers who fell in the different brackets appears not to have been shown.

Another point is that the contract to supply water to the Town is ultra vires. Article 1108, R.C.S., provides in part: "Any town or city in this State which has or may be chartered or organized under the general laws of Texas, or by special Act or charter, and which owns or operates waterworks, * * * shall have the power and right: * * *. 2. To purchase, construct and operate water * * * systems inside or outside of such towns or city limits, * * *. 3. To extend the lines of such systems outside of the limits of such towns or cities and to sell water * * * privileges or service to any person or corporation outside of the limits of such towns or cities, or permit them to connect therewith under contract with such town or city under such terms and conditions as may appear to be for the best interest of such town or city; * * *."

Appellants argue that the word "corporation" used in the statute means only a private corporation, and does not comprehend another city or town. The Town is a municipal corporation, organized as a town under the general laws of this State. The City is a home rule municipal corporation and operates under a special charter. By the provisions of Article 1175, § 14, R.C.S., such cities have full power of local self-government and have power "To manufacture its own electricity, gas, or anything else that may be needed or used by the public; to purchase and make contracts

with any person or corporation for the purchasing of gas, electricity, oil or any other commodity or article used by the public and to sell the same to the public upon such terms as may be provided by the charter."

■ The City not only has the powers expressly granted by the statute, but also those necessarily and fairly implied in or incident to the powers expressly granted. Tharp **v.** Blake, Tex.Civ.App., 171 S.W. 549.

The contract between the City and the Town provided: that water would be furnished for a period of ten years, unless the contract should be earlier terminated; that the rates charged were to be twice the regular rates for water furnished to resident consumers whose water consumption fell in the same bracket; that in the event the City's rate structure should be changed, the contract rates would be changed to conform therewith; that in cases of emergency only, the City had the right to discontinue the service without notice; and that upon thirty days notice the City had the right to discontinue service in the event its water supply became inadequate, such service to be resumed when the supply became adequate for the needs of the City's residents.

■■ We think error is not shown in the holding that the contract to furnish water to the Town was not ultra vires, or in the holding that the execution and performance of the contract do not constitute an abuse of corporate power. If the City had the power to make the contract, as was held by the trial court, and as we hold, its terms and conditions were matters for the legislative determination of the City's governing body, and its decision cannot be set aside by the courts except in clear cases of abuse.

■ We do not think that appellants' point that the City had no power to make a ten-year contract can be sustained. It is true that the people of the City elect a council every two years; but we cannot say that a council cannot make a contract to extend beyond its term of office. City of Brenham v. Brenham Water Co., 67 Tex. 542, 4 S.W. 143, cited by appellants, does not, in our view, hold to the contrary.

Appellants say that "the guaranty of continued service seems to discriminate unreasonably against members of unincorporated communities outside Fort Worth." Contracts between the City and other nonresident consumers of water are not in the record, and therefore we are not in a position to say that the holding of the court that the contract does not allow illegal discrimination is not correct.

■ The Councilmen who enacted the ordinance and made the contract here involved are responsible, not to the courts, but to the great body of the people who elected them. Where they have not exceeded their lawful powers, the courts cannot interfere. The necessity, wisdom, or expediency of their acts are matters for their exclusive determination. Their acts are legislative; the judicial function is to construe and apply the law, rather than to determine the wisdom of legislation. City of San Antonio v. Fetzer, Tex.Civ.App., 241 S.W. 1034.

■ Appellees earnestly contend that appellants have not the capacity to maintain this cause. Their contention is that appellants have no justiciable interest in the subject matter of the suit, and that no justiciable controversy exists between appellants and appellees. We are not prepared to hold that taxpaying citizens of the City, and customers of the City's Water Department, cannot go into court upon allegations of illegality in the matter of establishing a rate structure, or upon allegations of illegality in particular contracts whose performance might adversely affect appellants in their pecuniary rights. City of Austin v. McCall, 95 Tex. 565, 68 S.W. 791; Terrell v. Middleton, Tex.Civ.App., 187 S.W. 367; Id., 108 Tex. 14, 191 S.W. 1138; Id., 108 Tex. 14, 193 S.W. 139.

The judgment is affirmed.