98 N.J. Super. 8 (1967)
235 A.2d 905
ORADELL VILLAGE, ESQUIRE ESTATES, INC., POVERSHON CONSTRUCTION CO., INC., SOUTHFIELD HOMES, INC., BROOKLAWN GARDENS, INC., NEW JERSEY CORPORATIONS, AND RICHARD GEIGER AND WILSON KAPLAN TRADING AS WAYNE VILLAGE, PLAINTIFFS,
v.
TOWNSHIP OF WAYNE, A MUNICIPAL CORPORATION, DEFENDANT.
Superior Court of New Jersey, Chancery Division.
Decided November 16, 1967.
*9 Mr. Harvey Blicksilver for plaintiffs (Messrs. Leiblich and Cole, attorneys; Mr. Oscar R. Wilensky, of counsel).
Mr. Peter J. Van Norde for defendant.
MOUNTAIN, J.S.C.
Wayne Township owns and operates a water distribution system pursuant to R.S. 40:62-47 et seq. As the owner of such a utility it has the power to fix rates R.S. 40:62-77. Plaintiffs are the owners of garden apartments located within the municipality and served by the municipally-owned water system.
On December 6, 1960 the governing body of the township amended its former schedule of water rates by adopting an ordinance to which the plaintiffs take vigorous exception upon the ground that it discriminates against the owners of garden apartments. This ordinance, as well as its predecessor, follows the generally accepted practice of fixing (1) a *10 volume charge graduated downward as consumption increases, and (2) a minimum quarter-annual charge increasing with the size of the meter. Prior to 1960 an owner of a one-family residence and an owner of a garden apartment each paid a minimum charge of $7.50 per quarter. The garden apartments were so constructed that a single meter and a single connection provide for distribution to a large number of separate apartments within the complex, and until the adoption of the new ordinance the rate schedule, as mentioned above, was the same with respect to such an apartment house complex and a single-family residence. It became obvious that the owner of a multi-tenant building would in general pay much less for water per unit than would be the case with respect to the owners of single-family residences. A typical example, as suggested by defendant, is the following, where it is assumed that each residential dwelling unit and each garden apartment unit consumes 10,000 gallons per quarter:

 20 one-family dwellings 20 garden apartment units
 served through 20 meters served through 1 meter
 Amt. pd. per quarter: Amt. pd. per quarter:
 20 × 7.50 (min. chg.) = $150 200,000 × .20 = $40

This result being deemed unsatisfactory by the municipality, the ordinance in question was adopted. It imposes a minimum charge of $20 a year on each multi-tenant residential building for each tenant unit over and above the first tenant unit, this minimum charge entitling the consumer to 5,000 gallons per quarter. Plaintiffs contend that this rate is discriminatory to such an extent as to be in violation of the equal protection clause of the Fourteenth Amendment of the Federal Constitution.
The issue presented appears to be one of novel impression in New Jersey although it has been passed upon by courts of several other states. The great weight of authority supports such a classification. Knotts v. Nollen, 206 Iowa 261, 218 N.W. 563 (Sup. Ct. 1928); Lewis v. Mayor, etc. of Cumberland, 189 Md. 58, 54 A.2d 319 (Ct. App. 1947); *11 Land v. City of Grandville, 2 Mich. App. 681, 141 N.W.2d 370 (App. Ct. 1966); Caldwell v. City of Abilene, 260 S.W.2d 712 (Tex. Civ. App. 1953); City of Kermit v. Rush, 351 S.W.2d 598 (Tex. Civ. App. 1961). To the contrary see Kliks v. Dalles City, 216 Or. 160, 335 P.2d 366 (Sup. Ct. 1959). I believe the majority view is sound and should be followed in this state.
It seems clear and is not disputed by plaintiffs that the dual aspect of the rate structure is unobjectionable. It is clearly proper and quite customary to charge a smaller rate to one whose volume of consumption is larger. But a charge for water need not be based entirely upon volume consumed. It is proper to establish, additionally, a minimum rate which a consumer must pay even though he uses less than the minimum amount of water for which the charge is made. This is, in effect, a service charge for those who use less than the minimum amount, differing only from a fixed service charge unrelated to a minimum quantity of water in that under such a minimum rate the charge is absorbed when the minimum quantity of water is used. City of Rochester v. Rochester Gas and Electric Corporation, 233 N.Y. 39, 134 N.E. 828 (Ct. App. 1922). Plaintiffs' argument is solely based upon what they allege to be an arbitrary and unreasonable discrimination, and may be expressed in the following manner: Since the cost to the municipality to introduce water to a garden apartment complex is no more than the cost to introduce water to a residential establishment, the two must be treated exactly alike. This argument insists that cost of operation and distribution shall be the sole criterion to be considered in rate classification. The better reasoned decisions set forth above have all rejected this argument. Caldwell v. City of Abilene, is typical. There the ordinance under scruitiny bore a close resemblance to the one before this court. It read in part as follows:
"In all cases where more than one living or business unit is supplied through one meter, a minimum charge will be made for each living unit or business unit supplied through such meter. If two or *12 more living or business units are supplied through one meter, a minimum charge will be made each month for each unit regardless of whether units are occupied."
In that case plaintiffs alleged, as do plaintiffs here, that the cost of service to them was the same as that to owners of single-family dwellings, and hence the additional minimum charge was unreasonable and arbitrary. It was further contended, as here, that the only factor a municipality may consider in fixing water rates is the cost of the service. The court admitted that in both instances the cost was substantially the same but nevertheless held that the ordinance was neither unreasonable nor arbitrary. It went on to say that a municipality, in determining rate classification, may take into account many factors, including cost of service, the purpose for which the service is received, the quantity of water consumed, differences in character of the services furnished, time of use, or indeed any other matters that might present relevant and substantial differences as grounds of distinction. It was pointed out that multi-family building owners (as opposed to their tenants) were not in the same class as private homeowners since the former could more quickly reach a large consumption with accompanying lower rates. To permit plaintiffs to prevail, the court noted, would discriminate against owners of single-family buildings.
The other cases cited above as representing the majority view have adopted the same approach to this question and have applied the same reasoning. In Kliks v. Dalles City, however, the Supreme Court of Oregon examined most of these decisions and declared that they had been improperly decided. In that case the sole issue before the court was whether providing a more favorable rate to rooming houses, boarding houses, motels, hotels and trailer courts than to apartment houses constituted unreasonable discrimination. This is an issue different from the one we are considering. In the most recent case to consider the point, Land v. City of Grandville, supra, the Court of Appeals of Michigan adopted the rule of the majority and refused to accept the Oregon view.
*13 An apartment house is an aggregation of dwellings. The rate charged a family living in a multi-family dwelling should be essentially the same as that charged a family occupying a residence. It seems entirely reasonable to adopt a classification which takes account of the ultimate consumer, rather than a classification limited solely to a consideration of the utility's operating cost. It is the consumer who will bear the ultimate economic impact of the charge. The increased rate will presumably be passed on by the apartment owner to the tenants, either in the form of increased rent or otherwise. The result seems eminently fair.
This matter has come before the court on plaintiffs' motion for summary judgment with respect to this aspect of the case. In the light of what has been said above, the motion is denied.