**Charles M.M. SHEPHERD,
Plaintiff-Appellant,**

v.

**The CITY OF WENTZVILLE,
Defendant-Respondent.**

**No. 43915.**

Missouri Court of Appeals,
Eastern District,
Division One.

Nov. 30, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Denied
Jan. 14, 1983.

Application to Transfer Denied
Feb. 23, 1983.

Charles M. Shepherd, pro se.

Robert M. Wohler, O'Fallon, for defendant-respondent.

STEWART, Presiding Judge.

Plaintiff challenges the denial of his petition for a declaratory judgment in which he sought to have two ordinances establishing utility rates of defendant City declared unreasonable, arbitrary and unconstitutional. The trial court entered judgment in defendant City's favor.

We affirm.

The City of Wentzville owns and operates a water and sewer system. Ordinance 695 sets the billing rate for city water using a regressive rate schedule, the cost per hundred gallons decreasing as the volume used increases.[1]

The regressive rate schedule applies to commercial and residential multiple-unit complexes and to single entities. The rate is applied differently, however, to "multiple-unit complexes."

"Multiple-unit complexes," as this ordinance is applied by the City, includes apartment houses and multi-business office buildings. Motels, laundromats and nursing homes are treated as single enterprises.

In billing multiple-unit complexes, the City divides the total water volume used in a complex by the number of occupied units served. This smaller, quotient volume is then treated as though it were the amount actually used by each unit and is applied to the rate schedule to establish the per unit charge. This charge is then multiplied by the number of units that were occupied during the billing quarter to establish the water bill for the entire complex, for which the complex owner is responsible.

The system results in a total bill for such multiple complexes which is based on the volume assessed to the individual units, low volumes to which the higher rates apply.

The City thus precluded the more favorable charge multiple-unit complexes would pay if the regressive scale were applied to the total volume registered as is done with single entity users.

Ordinance 696 sets the City's sewer rates, comprised of a basic charge of $1.50 assessed to all City residents plus the water volume they used times $0.05 per hundred gallons. A similar quotient volume formula is used to calculate the total charge for multiple-unit complexes, however since the ordinance uses a flat rate for sewer usage, the result is that multiple-unit complexes differ from single enterprises in that they pay a basic charge equal to $1.50 multiplied by the number of occupied units. Like the water service ordinance, 696 places responsibility for paying the utility bills on the complex owner.

Plaintiff owns Pinehill Apartments in Wentzville consisting of four buildings, each accommodating eight units. Thus plaintiff receives four separate water bills for each service period.

Plaintiff, by this action, seeks to have the two ordinances declared unreasonable, arbitrary and unconstitutional, in the differential treatment accorded multiple-unit complexes. The trial court denied the petition.

Plaintiff first contends that the trial court failed to honor his timely request for findings of fact and conclusions of law. We find no request for specific findings of fact and conclusions of law in the record before us as required by Rule 73.01.1(b).[2] The judgment however, does give a statement of the grounds for its decision which satisfies the requirements of Rule 73.01.-1(b). Even if a request for specific findings of fact had been made the failure to make such findings is not reversible error. *First Fla. Bldg., Inc. v. Safari Systems, Inc.,* 570 S.W.2d 728, 730 (Mo.App.1978). We find no defect in the form of the judgment.

1. The quarterly water rate for city residents is $6.00 for the first 3,000 gallons; $0.08/100 gallons for the next 7,000 gallons; $0.07/100 gallons for the next 20,000 gallons; and $0.06/100 gallons thereafter.

2. Presently Rule 73.01(a)(2).

As we read plaintiff's principal point relied on, he complains that Ordinance 695 and Ordinance 696 provide for methods of charging for water and sewer service that are unreasonable, arbitrary and unconstitutional, in the differential treatment accorded multiple-unit complexes.

■ Municipal corporations that operate public utilities are not subject to the rate making process of the Public Service Commission. The courts, however, have equitable jurisdiction to prevent a municipality from enforcing public utility charges that are "clearly, palpably and grossly unreasonable." *Forest City v. City of Oregon*, 569 S.W.2d 330, 335 (Mo.App.1978).

Although the issues specifically presented in this case have not been addressed by the courts of this state, there is abundant authority, some conflicting, in other jurisdictions.

■ The basic precepts enunciated by all jurisdictions are that the function of fixing rates and the determination of whether differences in rates between classes of customers are to be made, and the amount of differences, is a legislative function not a judicial function. There is a strong presumption that the rates fixed by the municipality are reasonable and the burden of proving that the rates fixed by the municipality are unreasonable is upon the party challenging the rates. *Lewis v. Mayor and City Council of Cumberland*, 189 Md. 58, 54 A.2d 319, 323 (App.1947); *Gillam v. City of Fort Worth*, 287 S.W.2d 494, 497 (Tex.Civ. App.1956). *See also Kliks v. Dalles City*, 216 Or. 160, 335 P.2d 366 (1959).

■ A municipality may classify its users for the purpose of fixing rates if the classification is reasonable and if there is no discrimination within the class. *Beauty Built Construction Corp. v. City of Warren*, 375 Mich. 229, 134 N.W.2d 214, 218 (1965).

Plaintiff here argues that his apartment buildings should be classified the same as motels or hotels. The effect of the classification made in this case is to treat each

residential dwelling unit within the apartment complex as a single family dwelling. To treat the multiple-complex residential units, be they two family, eight family, or more, in the commercial classification with hotels, motels and tourist camps would discriminate against the single residential dwelling. It is true that not every tenant in plaintiff's complex uses the same amount of water but each uses water and has the benefit that arises from the use and availability of the plant and equipment.

This very issue has been faced by many jurisdictions and the majority has held that the classification of multiple-complex dwelling units with single family dwellings does not constitute unlawful discrimination. *Caldwell v. City of Abilene*, 260 S.W.2d 712 (Tex.Civ.App.1953); *Oradell Village v. Township of Wayne*, 98 N.J.Super. 8, 235 A.2d 905 (Ch.Div.1967); *Gilliam v. City of Fort Worth, supra.*[3]

■ We find the majority view to be persuasive and hold that the trial court did not err in holding that plaintiff did not carry the burden of proving that the classification of multiple-complex dwellings was "clearly palpable and grossly unreasonable." *Forest City v. City of Oregon, supra.*

■ Plaintiff would also argue that the rate charged plaintiff has no relation to the cost of service. Cost of service is but one consideration in the determination of the reasonableness of the rate. *Oradell Village v. Township of Wayne, supra*, 235 A.2d at 907. In any event plaintiff here has not undertaken to make proof of the cost of service and thus has failed to carry his burden on this issue.

■ Plaintiff also claims that he has been denied equal protection of the law because the terms of the ordinances are not defined and state no basis for their terms and classifications. An ordinance does not have to define each term nor does it have to state the underlying rationale for the adoption of the measure. Plaintiff cites no case where these requirements are made. The ordinances in question are not so indef-

**3.** *But see Kliks v. Dalles City*, 216 Or. 160, 335 P.2d 366 (1959) for the minority view.

**134**

inite as plaintiff would have us believe. It would be difficult and impractical to set out a comprehensive delineation of what uses constitute multiple-unit complexes. The determination of what comprises that term is best done on an ad hoc basis. Standards need not be set out in such a circumstance. *See Clay v. City of St. Louis,* 495 S.W.2d 672 (Mo.App.1973). The ordinance sets out the rate to be charged as well as the billing procedure. The means adopted are sufficiently definite in terminology.

Plaintiff contends that the minimum charges made under the ordinances for each unit occupied during a quarter are improper, unlawful and unconstitutional. The primary issue raised under this point is that the ordinances to the extent of the minimum charges are taxes and as such the ordinances "violate the provisions of Article X, Section 3 of the Constitution of the State of Missouri in that such taxes are not uniform in the same class of subjects ..." Plaintiff cites no cases in support of this or other contentions under this point. In any event, such charges are not taxes. *St. Louis Brewing Assn. v. City of St. Louis,* 140 Mo. 419, 37 S.W. 525, 528 (1896).

The ordinances here allow for adjustment in the billing when a unit within the complex is vacant for a billing quarter. The general rationale in the promulgation of minimum rates is that it is a service charge for making the service available to the customer. We find such a charge to be reasonable. *See Oradell Village v. Township of Wayne, supra.*

Other issues discussed in plaintiff's brief have been adequately covered by what we have said above.

Judgment affirmed.

STEPHAN and CRANDALL, JJ., concur.