Lavaca-Navidad 



TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00306-CV







Lavaca-Navidad River Authority; Texas Water Development 
Board; and City of Corpus Christi, Texas, Appellants


v.



City of Corpus Christi, Ex Rel. Henry Berryhill, Frank Hankins, Gloria Perez, Joe 
O'Brien, Dorothy McLaren; and Coastal Bend Sierra Club Group, Inc., Appellees






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 201ST JUDICIAL DISTRICT


NO. 94-01851, HONORABLE JERRY DELLANA, JUDGE PRESIDING








 The Lavaca-Navidad River Authority (the "LNRA") instituted this declaratory
judgment action seeking validation of certain contracts and related securities. See Tex. Rev. Civ.
Stat. Ann. art. 717m-1 (West Supp. 1995). The LNRA, the City of Corpus Christi, and the Texas
Water Development Board (the "TWDB") (1) appeal that portion of the trial court's judgment
invalidating a water supply contract ("Supply Contract No. 4") between the LNRA and the City
of Corpus Christi (the "City"). The trial court's judgment adopted the argument of appellees, five
City taxpayers and the Coastal Bend Sierra Club Group, Inc. (collectively, "Taxpayers"), that,
in order to be valid, Supply Contract No. 4 had to be approved in a City-wide election. We will
reverse that portion of the trial court's judgment presented on this appeal and will render judgment
declaring Supply Contract No. 4 valid and sufficient to support the issuance of bonds.



BACKGROUND


 The LNRA is a conservation and reclamation district created by the legislature. (2) 
It owns and controls forty-three percent of Lake Texana in Jackson County and is in the process
of acquiring ownership of the remaining fifty-seven percent from the TWDB. Over the past
fourteen years, the LNRA has entered into four water supply contracts providing for the sale of
water from Lake Texana. Three of the contracts also provide for the issuance and sale of
securities to finance water delivery facilities and to fund the purchase of the TWDB's interest in
the lake. The LNRA filed this action seeking a declaration validating these contracts and
securities. The dispute concerns only Supply Contract No. 4.

 Supply Contract No. 4 provides that each year for forty-two years the LNRA will
sell and deliver to the City up to 41,840 acre-feet of water from Lake Texana. From its water
revenues, the City must pay its proportionate share of the Lake Texana debt and operating and
maintenance expenses, as well as the debt service and operating expenses on its own facilities. 
Supply Contract No. 4 authorizes the LNRA to issue bonds for financing the pipeline required to
transport water from Lake Texana to the City, as well as bonds to generate revenue for partially
financing the LNRA's purchase of the TWDB's interest in Lake Texana. The City Council
approved Supply Contract No. 4; the matter was not submitted to the City's voters. 

 The LNRA filed suit seeking a declaratory judgment validating the four water
supply contracts and confirming its authority to issue bonds pursuant thereto. See Tex. Rev. Civ.
Stat. Ann. art. 717m-1, § 2. The City answered with pleadings in support of Supply Contract No.
4. Formosa Plastics Corporation, Inteplast Corporation, and the TWDB, all parties to LNRA
water supply contracts, intervened in support of all contracts and bonds subject to the suit. (3) The
Attorney General, a statutory defendant, (4) answered but expressed no position either in support of
or in opposition to the validity of Supply Contract No. 4. The Taxpayers intervened contesting
only Supply Contract No. 4. They alleged the contract was invalid because city voters had not
approved it in an election as required by the City's charter (the "Charter"). The Taxpayers did
not contest the other contracts and bonds subject to the requested declaratory relief. 

 The cause was tried without a jury. The trial court declared all LNRA contracts
and securities valid except Supply Contract No. 4, which the court declared to be invalid and
insufficient to support the issuance of bonds until approved by a majority vote at an election called
pursuant to article IX, section 10 of the Charter (hereinafter "Charter section 10"). The LNRA
and the City appeal the trial court's judgment as to Supply Contract No. 4. Appellants complain
on appeal that the trial court erred in declaring Supply Contract No. 4 invalid because (1) it is not subject to the Charter provision requiring voters' approval, but even if the provision
is so construed, (2) the overriding state law does not require an election.



DISCUSSION 


 The issue presented on appeal is whether Charter section 10 requires voter approval
of Supply Contract No. 4 in order for it to be validly authorized. (5) The answer turns upon the
construction of this Charter provision.



I.  Rules of Construction

 Courts apply the same rules of construction to city charters, ordinances, or statutes. 
See Mills v. Brown, 316 S.W.2d 720, 723 (Tex. 1958). A city charter should be interpreted as
if every word, phrase, and expression were deliberately chosen and used for a purpose. 
Hammond v. City of Dallas, 712 S.W.2d 496, 498 (Tex. 1986). The charter should be construed
as a whole rather than through an examination of isolated provisions. Id. The court should not
presume any exception other than those specifically set forth. Unigard Sec. Ins. Co. v. Schaefer, 572 S.W.2d 303, 307 (Tex. 1978); Railroad Comm'n v. Olin Corp., 690 S.W.2d
628, 631 (Tex. App.--Austin 1985, writ ref'd n.r.e.).

 Our construction is influenced by the fact that the City is a home rule city and
derives its power not from the Legislature but from the Texas Constitution. See Tex. Const. art.
XI, § 5; see also Tex. Rev. Civ. Stat. Ann. art. 1175 (West Supp. 1995) (enumerating home rule
city powers). Accordingly, the City may adopt any Charter provisions consistent with the general
laws of Texas or the constitution. See Tex. Const. art. XI, § 5; McCutcheon v. Wozencraft, 294
S.W. 1105, 1105-06 (Tex. 1927); City of Corpus Christi v. Unitarian Church, 436 S.W.2d 923,
927 (Tex. Civ. App.--Corpus Christi 1968, writ ref'd n.r.e.). These provisions, like city charter
provisions of all home rule cities, must be construed "in light of constitutional and statutory
provisions as they pertain to the charter provisions relating thereto." See Unitarian Church, 436
S.W.2d at 927. Powers of home rule cities may be limited only by their charters, the constitution,
or general law. Lower Colo. River Auth. v. City of San Marcos, 523 S.W.2d 641, 644 (Tex.
1975). Limitations may be express or implied, but they will not be implied unless they are clear
and compelling. Id. at 645.

 Under the heading "Public Utilities," Charter section 10 provides that:



The city shall have power to own, maintain and operate, within or without the city 
limits, any public utility, and the city council shall adopt appropriate 



ordinances for the maintenance and operation thereof and fix the compensation to
be charged therefor. The city shall have power to purchase electricity, gas, oil or
any other article used by the public on such terms as the city may deem proper for
sale and distribution to the inhabitants of the city and adjacent territory; provided,
that no contract of purchase binding the city for a longer period than five years
shall be valid unless authorized by a majority vote at an election called for such
purpose. 



(Emphasis added.)

 Charter section 10 thus authorizes the City to own and operate any public utility
and empowers the City to "purchase [for sale to area inhabitants] electricity, gas, oil, or any other
article used by the public," subject to the restriction that a purchase contract with a term longer
than five years must be authorized by the voters. (Emphasis added.) The restriction in Charter
section 10 expressly applies to contracts for the purchase of electricity, gas, and oil; it does not
expressly apply to contracts for the purchase of water, which is the subject of Supply Contract No.
4. The restriction in Charter section 10 also applies to contracts for the purchase of "any other
article used by the public." Because we read every word and phrase in a city charter as if chosen
for a deliberate purpose, we must determine whether the Charter provision was intended to
include water purchases within the phrase "any other article." Otherwise, water purchase
contracts are not subject to any restriction requiring voter approval. We hold that water purchases
are not included.



II.  Ejusdem Generis

 When general words follow a specific list of subjects in a statute or a charter, the
meaning of the general words is restricted to encompass only the similar type or kind of subjects
specifically enumerated. Stanford v. Butler, 181 S.W.2d 269, 272 (Tex. 1944). This principle
of construction is known as the rule of "ejusdem generis." Id. Applying this rule, the phrase
"any other article" should not be broadly construed but instead limited to "things of the same kind
or class as specifically mentioned." See Ayala v. City of Corpus Christi, 507 S.W.2d 324, 327
(Tex. Civ. App.--Corpus Christi 1974, no writ) (construing phrase "any other public utility service
or enterprise" as limited to utilities only like those specifically enumerated). Appellants thus
emphasize how water differs from electricity, oil, and gas. (6) By analogy, in the context of mineral
classification, water is not a thing of like kind to oil and gas. Fleming Found. v. Texaco, Inc.,
337 S.W.2d 846, 852 (Tex. Civ. App.--Amarillo 1960, writ ref'd n.r.e.) (holding class of minerals
including oil and gas does not include water). 

 Taxpayers, however, argue that water is of the same kind or class of article as
electricity, oil, and gas and thus is encompassed by the general phrase following the specific list
of electricity, oil, and gas. Taxpayers ardently assert that the plain everyday meaning of "public
utility" includes water along with gas and electric utilities. (7) 

 Appellants acknowledge that a water system serving the public is a public utility. 
The phrase in dispute, however, does not list utilities. Instead, it lists items that public utilities,
as businesses, might purchase: "electricity, gas, oil or any other article used by the public." Cf.
Ayala, 507 S.W.2d at 327 (construing general phrase "other public utility service or enterprise"). 
The specific list designates items to be purchased that are connected with energy production. 
Water, often used by power plants to generate electricity, could be "of the same kind or class"
of the items specifically listed. However, in the instant case, the City requires the purchase of
water for municipal and industrial purposes, not for the generation of electric power. 

 We conclude that water, in most respects, is unlike the specifically enumerated
articles listed for purchase by public utilities in Charter section 10 yet has some similarities. We
thus look to other sources to aid our interpretation of the provision. (8)



III.  History of Charter Section 10 

 In construing a statute, "a court may consider the object sought to be obtained and
the legislative history." Harris County Dist. Attorney's Office v. J.T.S., 807 S.W.2d 572, 574
(Tex. 1991). When determining the legislative intent of a statute, a court may examine the history
of the subject, the situation to be corrected, and the purpose to be accomplished. Magnolia
Petroleum Co. v. Walker, 83 S.W.2d 929, 934 (Tex.), cert. denied, 296 U.S. 623 (1935). When
determining the intent of those who adopt a city charter provision, our construction is guided by
similar inquiries. Accordingly, an earlier version of Charter section 10 offers insight into the
intent of the provision's adopters. 

 The predecessor provision (the "1939 Provision") read:


Public Utilities.- The city shall have power to own, maintain and operate, within
or without the city limits, complete water systems, gas plants, electric systems,
sewer systems, sewerage plants, abattoirs, fertilizer plants and other plants or
systems, incident to their effectual use, and the city council shall pass appropriate
ordinances for the maintenance and operation thereof and fix the compensation to
be charged therefor. The city shall have power to purchase electricity, gas, oil or
any other article used by the public on such terms as the city council may deem
proper, for sale and distribution to the inhabitants of the city and adjacent territory;
provided, that no contract of purchase binding the city for a longer period than five
(5) years shall be valid unless authorized by an election at which a majority of
those voting shall favor the making of such contract.



(Emphasis added.) The first sentence of the 1939 Provision did not merely refer generally to the
City's ownership of "any public utility" as is now the case. Instead, it specifically enumerated
a list of utilities the city might choose to undertake, including a water system. At the time, the
City operated only gas and water utilities. (9) Yet, even the 1939 Provision, as adopted, omits water
from the second sentence's list of articles requiring voter approval before long-term purchase. 


 In determining whether the word water is implied or was intentionally omitted from
the 1939 Provision, we further examine the source of the 1939 Provision language: former
paragraphs 11, 13, and 14 of article 1175 of the Revised Civil Statutes. Former paragraph 11 of
article 1175 detailed a home rule city's exclusive authority "to own, erect, maintain and operate
water works and [a] water works system." Act of Mar. 31, 1913, 33d Leg., R.S., ch. 147, § 4,
1913 Tex. Gen. Laws 307, 311 (Tex. Rev. Civ. Stat. Ann. art. 1175(11), since repealed and
codified at Tex. Loc. Gov't Code Ann. § 402.017(a) (West 1988 & Supp. 1995)). Separate from
paragraph 11, former paragraph 13 authorized home rule cities "to buy, own . . . maintain and
operate a system or systems, of gas, or electric lighting plant, . . . or any other public service or
public utility." Id. at 312 (Tex. Rev. Civ. Stat. Ann. art. 1175(13), since repealed and codified
at Tex. Loc. Gov't Code Ann. § 402.002(b) (West 1988)) (emphasis added). The first sentence
of the 1939 Provision incorporated similar language from article 1175(11) and (13). 

 Without reference to water, former paragraph 14 of article 1175 authorized cities
"to purchase and make contracts with any person or corporation for the purchasing of gas,
electricity, oil or any other commodity or article used by the public." Id. (Tex. Rev. Civ. Stat.
Ann. art. 1175(14), since repealed and codified at Tex. Loc. Gov't Code Ann. § 402.002(c) (West
1988)) (emphasis added). The second sentence of the 1939 Provision incorporated similar
wording. Former paragraph 14 did not list water, even though it was the subject of previous
paragraph 11, but specifically listed gas and electricity, the subjects of the immediately preceding
paragraph 13. The structure of former article 1175 gives no indication that the paragraphs dealing
with water and water works systems were related to the paragraphs dealing with gas, electricity,
and oil systems and purchases. Nothing suggests that water purchases were encompassed in the
phrase "any other commodity or article used by the public" as expressed in article 1175(14). (10)

 In this respect, we recognize that courts are not at liberty to add language where
the drafters have refrained from doing so. Seay, 677 S.W.2d at 25. Legislative intent may be
inferred from the fact that an act does not contain a particular provision. State v. Jones, 570
S.W.2d 122, 123 (Tex. Civ. App.--Austin 1978, no writ). When drafters employ a term in one
place and omit it from another, it should not be implied where excluded. See Bott v. American
Hydrocarbon Corp., 458 F.2d 229, 233 (5th Cir. 1972); J. Ray McDermott & Co. v. Vessel
Morning Star, 457 F.2d 815, 818 (5th Cir.), cert. denied, 409 U.S. 948 (1972).



IV.  City's Past Actions 

 Moreover, the City's past actions provide some evidence that the phrase "any other
article used by the public" was not intended to encompass water. When the meaning of a statute
is doubtful, the court may give weight to the construction placed upon it by the agency charged
with its administration. Tarrant Appraisal Dist. v. Moore, 845 S.W.2d 820, 823 (Tex. 1993);
Calvert v. Kadane, 427 S.W.2d 605, 608 (Tex. 1968); Meno v. Kitchens, 873 S.W.2d 789, 791
(Tex. App.--Austin 1994, writ denied). This construction is entitled to weight as long as it is
reasonable and does not contradict the plain language of the statute. Moore, 845 S.W.2d at 823. 
Courts tend to adopt the construction placed upon ordinances by those authorized with
administration of the ordinances. Carrollton Civil Serv. Comm'n v. Peters, 843 S.W.2d 186, 189
(Tex. App.--Dallas 1992, writ denied). 

 In the 1950s, the City entered into a series of water supply contracts with the
Lower Nueces River Water Supply District. Under a former statute, these water supply contracts
were subject to voter approval. (11) The water supply contracts as well as the City's ordinances
authorizing the contracts refer to this former statute as requiring voter approval of the contracts. (12) 
None of the contracts refer to voter approval required pursuant to any Charter provision. This
silence suggests that in the 1950s the City did not construe Charter section 10 to require voter
approval of water supply contracts.



V.  Charter Structure 

 The structure of the current Charter also indicates that Charter section 10 does not
apply to water purchases. While Charter section 10 no longer specifically references water or
water works in its first sentence, the Charter nevertheless specifically references water in article
IX, section 11, entitled "Water Supply Contracts for Sale of Untreated Water" (hereinafter
"Charter section 11"). Charter section 11, originally adopted in 1968, authorizes the City to
"contract to provide untreated water for a definite period of time or in perpetuity." The City may
enter into these contracts, notwithstanding other Charter provisions, by ordinance without voter
approval. (13) Charter section 11 clarifies the City's power to sell untreated water. Along with other
provisions in the original and 1938 Charters, it also indicates that when the City intended Charter
provisions to pertain to water, it expressly so provided in the Charter. (14)

 We will not imply a limitation on the broad powers of a home rule city when a city
charter does not expressly set forth one. See Lower Colo. River Auth., 523 S.W.2d at 645. Our
examination of Charter section 10 does not reveal a clear and compelling provision or intent
requiring voter approval of the City's long-term water purchase contracts, nor does a review of
the structure of the entire Charter indicate such a requirement. See id. As such, we do not
construe Charter section 10 as requiring that voters approve long-term water purchase contracts. 
Accordingly, we hold that water supply contracts are not included in the scope of Charter section
10; therefore, the Charter does not require voter approval to validate Supply Contract No. 4. We
sustain appellants' points of error complaining that the Charter does not require voters to approve
Supply Contract No. 4.

 


CONCLUSION
 

 In light of our construction of Charter section 10, we hold that the judgment
declaring Supply Contract No.4 invalid is erroneous. In a declaratory judgment action, this court
has a duty "to render such judgment as the trial court should have rendered." See NRG
Exploration, Inc. v. Rauch, 671 S.W.2d 649, 653 (Tex. App.--Austin 1984, writ ref'd n.r.e.). 
We therefore reverse the judgment of the trial court and render judgment declaring Supply
Contract No. 4 to be valid in all respects and sufficient to support issuance of bonds. Our holding
precludes the need to reach appellants' second argument that the overriding state law does not
require an election. 

 


 Marilyn Aboussie, Justice

Before Justices Powers, Aboussie and B. A. Smith

Reversed and Rendered

Filed: July 12, 1995

Do Not Publish
1.   The TWDB's brief, entitled "Brief of Appellee Texas Water Development Board,"
prays for a judgment declaring legally sufficient water supply contracts to be valid. Upon
the LNRA and the City's motion, the TWDB has been realigned as an appellant in this
appeal. 
2.   See Tex. Const. art. XVI, § 59; Act of May 15, 1941, 47th Leg., R.S., ch. 361, art. II,
§ 1, 1941 Tex. Gen. Laws 568, 574-75. The LNRA controls, stores, preserves, and
distributes waters of the rivers and streams of Jackson County for domestic, municipal, flood
control, irrigation, and other useful purposes. Tex. Const. art. XVI, § 59. 
3.   Formosa Plastics and Inteplast Corporation have been dismissed from the appeal.
4.   See Tex. Rev. Civ. Stat. Ann. art. 717m-1, § 4. The Attorney General has been
dismissed from the appeal.
5.   Before trial, the parties stipulated as follows:


     [Taxpayers] dispute[] the validity of Supply Contract No. 4, and any
collateral matters depending upon its validity, asserting that in order for the
contract to be valid an election must be held, and the contract approved,
pursuant to Article IX, § 10, of the City Charter of the City of Corpus
Christi.


     In all other respects, the validity of the bond issues, contracts, and other
matters presented by [the LNRA's] Original Petition are uncontested.
6.   Among other differences, appellants note that water, unlike electricity, oil, and gas,
(1) is a uniquely scarce resource owned and controlled exclusively by the state or its
governmental entities; (2) must be acquired from the state and as such the right to use it
is a constitutionally protected property right; (3) must be obtained where supplies are
located and may thus require years to obtain a dependable supply; (4) is traditionally
associated with long-term contracts; and (5) is essential to needs of human existence. 
7.   Taxpayers also claim water is similar to electricity, oil, and gas because, among
other reasons, (1) oil, gas, and water are all carried in pipelines; (2) all four of the items
are traditionally listed as city utilities; (3) all four items are metered goods; and (4) all
four are essential infrastructure items for municipal development. 
8.   Taxpayers alternatively argue that ejusdem generis should not apply to Charter section
10, contending that the voter approval restriction for long-term contracts "is a flat requirement
for all public utility purchase contracts" regardless of specific or general categories. 
Taxpayers offer no authority for this argument, and we find it without merit. 
9.   The record indicates that the City has never operated electric or oil utility systems.
10.  Taxpayers argue that case law interpreting article 1175 indicates otherwise. They
cite Gillam v. City of Fort Worth, 287 S.W.2d 494 (Tex. Civ. App.--Fort Worth 1956, writ
ref'd n.r.e.), for the proposition that the phrase "any other commodity or article used by the
public" authorizes water purchases. We disagree. Gillam does not expressly address the
absence of the word water from article 1175(14). Id. at 498-99 (upholding authority of City of
Fort Worth to sell water outside city limits primarily based on former article 1108 of the
Revised Civil Statutes, which expressly authorized sales of water to any person or corporation
outside city limits). 
11.  See Act of May 26, 1949, 51st Leg., R.S., ch. 342, § 3, 1949 Tex. Gen. Laws 667,
667-68 (Tex. Rev. Civ. Stat. Ann. art. 1109e, since repealed and codified at Tex. Loc. Gov't
Code Ann. § 402.020(f) (West 1988)). 
12.  One ordinance states: "It is necessary under authority of . . . Article 1109e, . . .
before entering the contract for such purpose of obtaining water for the Water Supply of
the City . . . , to submit such contract to an election of [the City's] qualified voters . . . ." 
Each water supply contract states something to the effect that "[t]he parties hereto are
given the power to make and enter into this contract pursuant to the provisions of . . .
Article 1109e, . . . the said authority of the City to so contract now having been
confirmed by an election duly held for that purpose in said City in accordance with and
as required by said Statute." 
13.  Taxpayers assert that because the City can enter into water sales contracts without
voter approval, notwithstanding other provisions of the Charter, Charter § 10 must
require voter approval for contracts for the purchase of water. However, the
"notwithstanding" language of Charter § 11 could apply to any number of Charter
provisions in existence at the time of its adoption, including provisions limiting the City's
general contracting power and power to extend the existing water works system. See
Charter art. X, § 2 & art. IX, § 31 (1909, amended 1987). 
14.  The 1939 Charter included a provision for the regulation of utility rates which
included the City Council's "power to fix and regulate the price of water, gas, electric
lights and power." Charter, art. VIII, § 14 (1939, amended 1987). The 1939 Charter
also included specific sections providing for water and gas connections. Id. § 16. The
original Charter included specific sections for the establishment of a water works system and
the extension thereof. Charter, art. IX, §§ 30, 31 (1909, amended 1987).  



n must be held, and the contract approved,
pursuant to Article IX, § 10, of the City Charter of the City of Corpus
Christi.


     In all other respects, the validity of the bond issues, contracts, and other
matters presented by [the LNRA's] Original Petition are uncontested.
6.   Among other differences, appellants note that water, unlike electricity, oil, and gas,
(1) is a uniquely scarce resource owned and controlled exclusively by the state or its
governmental entities; (2) must be acquired from the state and as such the right to use it
is a constitutionally protected property right; (3) must be obtained where supplies are
located and may thus require years to obtain a dependable supply; (4) is traditionally
associated with long-term contracts; and (5) is essential to needs of human existence. 
7.   Taxpayers also claim water is similar to electricity, oil, and gas because, among
other reasons, (1) oil, gas, and water are all carried in pipelines; (2) all four of the items
are traditionally listed as city utilities; (3) all four items are metered goods; and (4) all
four are essential infrastructure items for municipal development. 
8.   Taxpayers alternatively argue that ejusdem generis should not apply to Charter section
10, contending that the voter approval restriction for long-term contracts "is a flat requirement
for all public utility purchase contracts" regardless of specific or general categories. 
Taxpayers offer no authority for this argument, and we find it without merit. 
9.